COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Huff and Malveaux
Argued at Alexandria, Virginia

UNPUBLISHED

NOLAN MARCUS FORNESS, II

MEMORANDUM OPINION[*] BY

v.       Record No. 1029-21-4

JUDGE GLEN A. HUFF

JUNE 28, 2022

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
William T. Newman, Jr.,[1] Judge

Alan J. Cilman for appellant.

Timothy J. Huffstutter, Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


Nolan Marcus Forness, II ("appellant") was convicted of driving under the influence

("DUI"), second offense in ten years, in the Arlington County Circuit Court (the "trial court")

following a jury trial.  He appeals that conviction to this Court, raising various alleged errors by

the trial court.  Because none of his arguments succeed on their merits, this Court affirms.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Although Judge Newman signed the final orders in this case, Judge Daniel S. Fiore, II
presided over the pretrial motions hearing.

# I.  BACKGROUND[2]

In the early morning hours of November 21, 2019, multiple officers with the Arlington County Police Department arrived at a McDonald's in response to a call about someone sleeping in a car in the restaurant's drive-through.  The officers used their four police cruisers to encircle the car.  Officer Whitney Ruby walked up to the idling car and found appellant sleeping inside, seated in the driver's seat.  She reached in, turned the car off, and removed the keys.  She noticed the fly of appellant's jeans was open and that he was "slumped over with his head . . . resting on his . . . chest."

After appellant woke up, the officers asked if he knew where he was.  He responded, "Yes, here," and clarified he meant Arlington but said no more.  Officer Ruby noticed he smelled of alcohol and had a "rather unsteady" gait and "was kind of swaying back and forth."  When asked if he drank anything that night, he answered, "A couple of . . . twelve-ounce beers" during the "early morning hours."  When Officer Ruby explained that it was already the early morning, he said he drank the beers "yesterday morning."

Officer Ruby then asked appellant to complete multiple field sobriety tests.  He performed four in total:  first, Officer Ruby had him demonstrate his finger dexterity by touching each finger on a hand to his thumb in order and counting.  Appellant told her he had an issue with his ulnar nerve that may hinder his ability to complete the task; when he tried, he "arbitrarily touched his fingers to his thumb in an order [Officer Ruby] was . . . unable to keep track of . . . and he . . . did not count out loud."

---

[2] Unless otherwise noted, this Court views the evidence in the light most favorable to the Commonwealth, the prevailing party at trial. *Dandridge v. Commonwealth*, 72 Va. App. 669, 676 (2021) (noting, however, that when an appellate court reviews a refusal of a proposed jury instruction, the court "view[s] the evidence in the light most favorable to the proponent of the instruction").

For the second test, Officer Ruby instructed appellant to walk heel-to-toe in a straight line with his arms to his side for nine paces. She told him to then turn by taking "a series of small steps" and walking nine more paces; she also told him to count each pace aloud. Appellant's "feet were offline" for his first several paces. He then spun around incorrectly and announced, "And then I turn around," after he had already turned. As he kept walking, several more of his steps fell "offline" and were "not straight heel[-]to[-]toe." He also "had to bobble and readjust his feet." He again failed to count aloud.

For the third test, Officer Ruby asked appellant to stand on one foot, lift his other foot six inches off the ground, and count to thirty. Appellant did so but counted only to seven before putting his foot down; he stopped counting at ten and did not try to start the test over again.

For the final test, Officer Ruby told appellant to count backward from sixty-three to thirty out loud. Appellant began counting but stopped at fifty-three and protested, "It's not elementary school." After the tests, Officer Ruby asked appellant to complete a breathalyzer test, but he refused. She then arrested him for driving under the influence and took him to the adult detention center.

At the detention center, Officer Ruby again asked appellant to take a breathalyzer. This time he agreed and blew into the machine, but Officer Ruby then instead decided to obtain a warrant for a blood draw. After she secured the warrant, Officer Leslie Grever drove appellant to the hospital for the blood draw.

A little after 5:30 a.m., about three hours after appellant's arrest, Nurse Erica Besore drew appellant's blood at the hospital. After completing the blood draw, she gave the blood-draw kit to Officer Ruby. The certificate of blood withdrawal bears Besore's name on the line titled "Blood Taken By," and includes a date of November 21, 2019. Dr. Kevin Schneider, a forensic toxicologist with the Virginia Department of Forensic Science, tested appellant's blood

in December 2019.  He later testified at trial that the vials were intact, undamaged, and "had no evidence of tampering."  The test of appellant's blood showed a blood alcohol content of 0.198 percent by weight by volume.  Dr. Schneider completed a certificate of analysis and attached to it the certificate of blood withdrawal from the vial.

Following the blood draw, Officer Grever drove appellant back to the detention center.  From the back seat, appellant admonished Officer Grever for texting and driving.  Officer Grever responded, denying appellant's assertion.  Appellant then told Officer Grever that texting and driving was illegal, and Officer Grever said, "So is drinking and driving."

After a pause, appellant said, "I'm not sober, I can tell you that."  She replied, "What was that?" and "What did you say?"  After another pause, appellant again admonished Officer Grever, telling her, "Don't jeopardize my . . . life while you're driving me."  Officer Grever retorted that appellant "jeopardized [his] own life and other people's lives driving drunk."

The two continued:

> [Appellant]:  Yeah right, in the McDonald's drive-through.
>
> Officer Grever:  Yeah, how'd you get there? . . . You had to have driven.  You were in your car, in the drive-through.
>
> [Appellant]:  Yeah from Culpeper . . .
>
> Officer Grever:  You drove to Arlington from Culpeper drunk?
>
> [Appellant]:  Yeah, like a pro.

At no time during the events recounted above did investigators give appellant *Miranda*[3] warnings.

After his conviction for DUI, second offense in ten years, in the Arlington general district court, appellant appealed to the trial court on July 20, 2020.

---

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

On November 25, 2020, appellant moved to dismiss the case, alleging the prosecution destroyed or withheld video evidence of his arrest. The motion, referring to the various police officers present for appellant's arrest, alleged that "the Commonwealth provided videos from [Officers] Ruby and Lipschutz, does not know if [Officers] Miller and Robertson have videos, and knows that [Officers] Mason['s] and Mulrain['s] videos have been destroyed." The Commonwealth answered that it provided appellant with all "extant" video evidence it had and that appellant's motion "assumed, without any reason or justification, that the other vehicles initially on-scene . . . recorded" his arrest. According to the Commonwealth, for various reasons, none of the other video recording devices were turned on during the investigation, so no additional video existed. At a pretrial motion hearing on November 30, 2020, appellant's counsel began arguing his motion, but the trial court said consideration of the motion was "premature" so it would not grant the motion at that time. Later the same day, it denied the motion (along with other pretrial motions) in a written order.

Also at the November 30 motions hearing, the trial court considered appellant's motion to suppress the blood test. Appellant's counsel argued that, rather than securing a warrant, the officers' only authority to conduct a blood draw came from Virginia's implied consent statute. Under that statute, a driver gives implied consent to a blood or breath test only when he or she "operates a motor vehicle upon a highway." Code § 18.2-268.2. And appellant claimed that because he was arrested in a parking lot rather than a "highway," the implied consent statute did not apply. Calling appellant's argument a "red herring" that "misses the point," the trial court ruled the implied consent statute was inapplicable because the police obtained a warrant. The trial court accordingly denied the motion.

Also at the November 30 motions hearing, appellant's counsel objected to Officer Ruby's testimony about the field sobriety tests. Counsel claimed the tests constituted scientific evidence

subject to screening under *Spencer v. Commonwealth*, 240 Va. 78 (1990). The trial court overruled his objection. He renewed this objection at trial, adding that such tests could not serve as evidence to establish intoxication beyond a reasonable doubt and that the Commonwealth had provided no metrics for examining appellant's performance of the tests. The trial court overruled those objections too.

Before trial, on June 10, 2021, appellant filed a motion *in limine* asking the trial court to prevent "the Commonwealth from mentioning any prior conviction of [appellant] during the guilt phase of the trial," with the goal of excluding any mention of his prior DUI conviction. Appellant argued the conviction was prejudicial and relevant only to his sentencing rather than proving the elements of the charge against him—DUI, second offense within ten years. The trial court denied his motion and admitted his prior conviction into evidence.

Appellant's trial was held on June 14 and 15, 2021, during which Officer Ruby, Officer Grever, Nurse Besore, and Dr. Schneider testified to the facts as stated above. The Commonwealth also introduced the only video of appellant's arrest—a dashcam video that did not include Officer Ruby's initial interaction with appellant—and the video of his interaction with Officer Grever in her car. The Commonwealth also admitted the certificate of analysis with the certificate of blood withdrawal attached.

At trial, the trial court refused two of appellant's proffered jury instructions relevant to this appeal. The first, Instruction T, read, "In Virginia, sleeping in a vehicle with the engine is off [sic] and the key not in the ignition is not operating a vehicle[,]" and cited *Sarafin v. Commonwealth*, 288 Va. 320 (2014). In refusing the instruction, the trial court said, "That's not the facts of this case." Appellant's counsel acknowledged the testimony reflected that the car was idling but insisted the instruction was needed because the jury did not have to believe that testimony. Nonetheless, the trial court denied the instruction.

Appellant also asked the court to grant Instruction U, which would have told the jury:

> The admission of the blood or breath test results in this case is not determinative of guilt. You shall, regardless of the result of any blood or breath tests, consider other relevant admissible evidence of the condition of the defendant. You shall make your determination from all the evidence presented concerning the defendant's condition at the time of the alleged offense.

The trial court rejected this instruction too. The court acknowledged the instruction properly stated the law but explained that it wanted to "keep [the instructions] as simple as possible" and the model instruction adequately covered the issue by telling the jury it may—rather than must— infer intoxication from the results of a blood or breath test. For example, the trial court instructed the jury that the Commonwealth must establish that, at the time he was operating the vehicle, "he had a blood alcohol concentration of 0.08 or more, or was under the influence of alcohol." It also instructed the jury, "A person is under the influence of alcohol if he has drunk enough . . . alcoholic beverages to so affect this manner, disposition, speech, muscular movement, general appearance, or behavior as to be apparent to observation."

Appellant was convicted of DUI, second offense in ten years. The jury recommended as punishment eight months in jail and a $1500 fine. The trial court adopted the recommendation and sentenced appellant to 240 days in jail, with 120 days suspended, and a fine of $1500. This appeal followed.

## II. ANALYSIS

Appellant alleges a series of errors by the trial court, with various sub-arguments. He first takes issue with the trial court's consideration and admission of testimony on his performance on the field sobriety tests. He also objects to the admission of the blood test. He then claims the trial court should have excluded his incriminating statements because the police obtained them without providing him with *Miranda* warnings. He raises an alleged violation of his due process rights, too, asserting the Commonwealth withheld or destroyed video evidence of

his arrest. He next asks this Court to hold that the trial court should have excluded evidence of his prior DUI conviction from the guilt phase of his trial. And finally, appellant says the trial court erred in refusing two of his proffered jury instructions.

All of appellant's arguments fail on the merits. This Court evaluates each of his claims separately.

## A. The Field Sobriety Tests

Appellant cites multiple ways he says the trial court erred in admitting the field sobriety tests. For starters, appellant says, the evidence of the field sobriety tests should never have been admitted at trial because such tests are meant to provide evidence of intoxication to establish probable cause to arrest, not to prove intoxication beyond a reasonable doubt. Moreover, even if admissible, testimony about the tests constitutes "scientific evidence," so the trial court should have screened that evidence under *Spencer*, 240 Va. 78, and *Billips v. Commonwealth*, 274 Va. 805 (2007), before admitting it.[4] And regardless, he continues, the Commonwealth failed to show a "direct link or . . . correlation between intoxication and performance on any of the field sobriety tests," nor did it provide any standards for the jury or judge to determine appellant's performance level. Because he challenges the trial court's decision to admit the evidence, this Court reviews that decision for an abuse of discretion. *Dickens v. Commonwealth*, 52 Va. App. 412, 417 (2008).

Appellant wants this Court to hold that evidence of a person's performance on a field sobriety test cannot serve as evidence of intoxication in determining his guilt. But this argument ignores that Virginia courts have previously considered a defendant's performance on field

---

[4] Appellant also argues the trial court erred in refusing to apply *Spencer* to the field-sobriety-test testimony at the pretrial motions hearing based on its belief that the *Spencer* rule does not apply to probable cause determinations. But this Court concludes appellant waived this portion of his assignment of error and thus does not reach that issue.

sobriety tests[5] as circumstantial evidence of intoxication.  *See, e.g.*, *Rich v. Commonwealth*, 292 Va. 791, 802-03 (2016) (noting, among other evidence, that the appellant "performed poorly on a series of field sobriety tests administered shortly after the accident" and finding evidence sufficient to support her DUI maiming conviction); *Lemond v. Commonwealth*, 19 Va. App. 687, 695 (1995) (same for the appellant's DUI conviction).

A field sobriety test provides police officers with an opportunity to observe a driver's behavior, coordination, and movement.  Officers may later testify about those observations as circumstantial evidence of the driver's level of physical and mental impairment, which directly translate to a driver's ability to operate a car safely.  This tracks with the text of the DUI statute, which states a person may not "drive or operate any motor vehicle . . . while such person is under the influence of [intoxicants] to a degree which impairs his ability to drive or operate any motor vehicle . . . safely."  Code § 18.2-266.

At the same time, several reasons caution against allowing a person's performance on a field sobriety test to stand alone as conclusively establishing intoxication beyond a reasonable doubt.  *See Jones v. Commonwealth*, 279 Va. 52, 58 (2010) (noting a person may refuse a field sobriety test because the "person may be tired, may lack physical dexterity, [or] may have a limited ability to speak the English language"); Steven J. Rubenzer, *The Standardized Field Sobriety Tests:  A Review of Scientific and Legal Issues*, 32 L. & Hum. Behav. 293, 307 (2008) (reviewing studies on the reliability of field sobriety tests and warning of the tests' "deficiencies," the possibility of error, and "unanswered questions" in relevant research); *see also Simon v. Commonwealth*, 58 Va. App. 194, 206 (2011) ("[C]ircumstantial evidence [must

---

[5] In discussing "field sobriety tests," this opinion uses that phrase to refer to "tests intended to assess a person's ability to perform basic acts at the direction of a police officer, including acts involving walking, standing, physical balance, and recitation of various information," such as the activities at issue in this case.  *Jones v. Commonwealth*, 279 Va. 52, 54 n.1 (2010).

be] sufficiently convincing to exclude every reasonable hypothesis except that of guilt." (quoting *Coleman v. Commonwealth*, 226 Va. 31, 53 (1983)). This case, however, is not that hypothetical case; the Commonwealth produced other evidence of intoxication on top of the field sobriety tests, such as appellant's other abnormal behavior and slurred speech, the smell of alcohol about his person, and the blood test result.

Appellant also contends field sobriety tests are "scientific" evidence, and so the trial court should have made "a threshold finding of fact with respect to the reliability of the scientific method offered." *Spencer*, 240 Va. at 97; *see also Billips*, 274 Va. at 809 (holding *Spencer* applies to sentencing phase of trial and "judicial proceedings generally").

But appellant cites no case law, scientific evidence, or other authority to establish the tests used here were "scientific." Rule 5A:20(e) obligates appellant to provide this Court "principles of law and authorities" to support each argument in his opening brief. Given his significant omission of authority to support his claim that field sobriety tests constitute scientific evidence, this Court deems the argument waived. *See Ceres Marine Terminals v. Armstrong*, 59 Va. App. 694, 708 (2012) ("A significant omission . . . will result in waiver of the argument on appeal.").

### B. The Blood Test

Appellant also challenges the admission of his blood test for two reasons: first, the Commonwealth could not obtain a warrant to draw his blood because it was bound by Virginia's implied consent statute and its requirements.[6] And second, the certificate of blood withdrawal,

---

[6] Appellant also argues the trial court incorrectly found that *Birchfield v. North Dakota*, 579 U.S. 438, 476-77 (2016), effectively overruled the implied consent statute's requirements. And for good measure, he adds that the implied consent statute is a restriction on admissibility of evidence. Because the above analysis renders the implied consent statute irrelevant, these arguments require no further consideration. *See id.* (addressing only *warrantless* blood draws under a state's implied consent statute).

required by Code § 18.2-268.6, was admitted without authentication or testimony about who wrote it, and the Commonwealth did not establish a clear chain of custody for the tested blood.

Appellant's first argument requires statutory interpretation, which this Court conducts *de novo*. *Eley v. Commonwealth*, 70 Va. App. 158, 162 (2019). Under Virginia's implied consent statute, any person "operat[ing] a motor vehicle upon a highway" "shall be deemed . . . to have consented" to a breath test or blood draw to test his blood alcohol content "if he is arrested" for one of any enumerated DUI offenses. Code § 18.2-268.2. According to appellant, when the General Assembly adopted this statute, it necessarily supplanted the traditional means of conducting a search or seizure: obtaining a warrant. Thus, in appellant's opinion, the officers here could not have obtained a blood draw by way of a warrant.

The text of the implied consent statute, however, says no such thing. In fact, the statute coexists with Virginia's warrant statute. *Compare* Code § 18.2-268.2 (implied consent statute), *with* Code § 19.2-56 (providing procedures for issuing warrants). Adopting appellant's reading would therefore violate traditional statutory interpretation principles. *See Appalachian Power Co. v. State Corp. Comm'n*, 284 Va. 695, 706 (2012) ("Rules of statutory construction prohibit adding language to . . . a statute."); *Blue v. Va. State Bar*, 222 Va. 357, 359 (1981) ("A statute should be construed, where possible, with a view toward harmonizing it with other statutes."). It would also ignore Fourth Amendment fundamentals. *See Wolfe v. Commonwealth*, 67 Va. App. 97, 104 (2016) ("The constitutional validity of the implied consent statute is well established."); *see also Hargraves v. Commonwealth*, 37 Va. App. 299, 307 (2002) ("Searches made by the police pursuant to valid consent do not implicate the Fourth Amendment.").

Because the police obtained a warrant, the implied consent statute is irrelevant to this case. In the trial court's words, appellant's argument about implied consent amounts to nothing more than a "red herring" that "misses the point." The police got a warrant to draw appellant's

blood and were accordingly permitted to draw his blood pursuant to applicable statutory procedures.

Appellant warns, though, that if the Commonwealth can also draw one's blood by obtaining a warrant, that would nullify the statutory blood-draw procedures. That fear flows from a misreading of the statutes. Although Code § 18.2-268.2 sets out the procedure for implied consent, many of the other adjacent statutory procedures governing blood draws apply to all Chapter 7, Article 2 offenses in Title 18.2 of the Virginia Code, which includes driving while intoxicated. *See* Code § 18.2-268.6 ("The blood sample withdrawn pursuant to § 18.2-268.5" requires a "certificate of blood withdrawal form[] . . . ."); Code § 18.2-268.5 (imposing requirements and qualifications "[f]or the purposes of *this article*"). So even when the Commonwealth secures a warrant for a blood draw, it would still, for example, need a certificate of blood withdrawal and a statutorily qualified person to perform the blood draw. *See* Code §§ 18.2-268.5, -268.6. For these reasons, this Court finds no merit in appellant's first argument on the blood test.

In his second argument, appellant attacks the authentication of the certificate of blood withdrawal (required by Code § 18.2-268.6) and the blood sample's chain of custody. But these claims go to the weight of the evidence, not its admissibility. *See* Code § 18.2-268.11; *Pope v. Commonwealth*, 60 Va. App. 486, 511 (2012) ("In the event that a gap in the chain of custody is shown, 'gaps in the chain [of custody] normally go to the weight of the evidence rather than its admissibility.'" (alteration in original) (internal quotation marks omitted) (quoting *Aguilar v. Commonwealth*, 280 Va. 322, 332-33 (2010))). Because appellant takes issue with the weight of the evidence, this Court concludes the trial court did not err in admitting the blood test, including the blood certificate and blood sample.

C. Appellant's Incriminating Statements

Appellant further asks this Court to find error in the admission of his incriminating statements made to Officer Grever, which he says should have been suppressed because he never received his *Miranda* warnings. Assuming without deciding that the admission of appellant's incriminating statements was error, their admission was harmless beyond a reasonable doubt.

"[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt . . . ." *Lilly v. Commonwealth*, 258 Va. 548, 551 (1999) (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)). In doing so, this Court must ask whether, beyond a reasonable doubt, the "verdict would have been the same absent the error." *Neder v. United States*, 527 U.S. 1, 17 (1999). The Court can consider "a host of factors, including the importance of the tainted evidence in the prosecution's case, whether that evidence was cumulative, the presence or absence of evidence corroborating or contradicting the tainted evidence on material points, and the overall strength of the prosecution's case." *Lilly*, 258 Va. at 551.

Although appellant's statements included assertions that he was intoxicated and drove while intoxicated, the statements were cumulative given the Commonwealth's trove of other evidence establishing those same facts. The officers found appellant in a running car, at the wheel, in an odd place; without more, one could make no other reasonable inference other than appellant drove himself there. Appellant smelled of alcohol, could not complete the tasks asked of him, and slurred his words. The video evidence confirmed appellant's abnormal behavior. And appellant's blood test showed a blood alcohol level well above the statutorily proscribed level.

The incriminating statements were simply not necessary to an already conclusive case. The Commonwealth brought up the statements before the jury on direct examination of Officer

Grever, during which it played the video of the exchange, and briefly in its opening and closing arguments, listing it with the vast amount of other evidence in the case. Because of the statements' cumulative nature, the strength of Commonwealth's case, and the prosecution's minor reliance on the statements, this Court concludes "beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." *Neder*, 527 U.S. at 18. Therefore, any error was harmless.

## D. The Lack of Video Evidence

On appeal, appellant maintains the Commonwealth improperly withheld or destroyed additional video evidence of his arrest, violating his due process rights.[7] Appellant characterizes this as a violation of *Brady v. Maryland*, 373 U.S. 83 (1963), which applies to cases involving "exculpatory evidence still in the government's possession, of which the exculpatory value is known." *Gagelonia v. Commonwealth*, 52 Va. App. 99, 114 (2008). He admits he does not know if any purportedly missing videos would have shown whether the car was idling or otherwise provided exculpatory evidence.

Appellant also alleges the Commonwealth could have destroyed video evidence of his arrest. His claim therefore also refers to "evidence that is no longer in the government's possession, whose exculpatory value, if any, is unknown" and consequently alleges violations of *California v. Trombetta*, 467 U.S. 479 (1984), and *Arizona v. Youngblood*, 488 U.S. 51 (1988). *Gagelonia*, 52 Va. App. at 114. Regardless, appellant bears the burden of establishing either a

---

[7] The Commonwealth asserts appellant waived this argument below because, at the motions hearing, the trial court said it was "premature" to dismiss the case. Nonetheless, the trial court denied the motion in an order later that day. Because appellant asserted his objection and the trial court took the opportunity to rule on the issue, Rule 5A:18 does not preclude its consideration on appeal. *Cf. Scialdone v. Commonwealth*, 279 Va. 422, 436-37 (2010); *Kosko v. Ramser*, 299 Va. 684, 689 (2021) ("[A] trial court speaks only through its written orders . . . ." (internal quotation marks omitted)).

*Brady* or *Trombetta-Youngblood* violation. *See id.* at 115; *Church v. Commonwealth*, 71 Va. App. 107, 117 (2019).

Appellant has not met that burden here. Indeed, nothing in the record suggests the video material he refers to still exists or ever existed. He assumes the videos exist because the other officers and their vehicles at the scene had cameras, but the Commonwealth explained at the motions stage that those cameras were not activated and that it had handed over all existing video evidence. He claims his knowledge of the supposed destruction of the videos comes from an email he received from the Commonwealth, which led to his filing of the motion to dismiss. But that email was not appended to his motion and is absent from the record before this Court. Moreover, viewing the evidence in the light most favorable to the Commonwealth, the Commonwealth's response to the motion refutes appellant's argument that videos were destroyed. Other than that, appellant has provided only bald accusations that the Commonwealth "has played fast and loose with the truth" and has acted with "indifferen[ce]" to appellant's rights. His argument therefore stands on only an insistent belief that the nonexistent evidence does in fact exist; without more, he has not shown a violation of due process.

E. Appellant's Previous Conviction

Appellant also argues the trial court should have granted his motion *in limine* to stop the Commonwealth from mentioning his prior DUI conviction during the guilt phase of the trial. Separate from the general DUI statute (Code § 18.2-266), Code § 18.2-270 sets out DUI penalties: subsection (B)(2) of that statute states that

> [a]ny person convicted of a second offense committed within a period of five to 10 years of a prior offense under 18.2-266 shall upon conviction of the second offense be punished by a mandatory minimum fine of $500 and by confinement in jail for not less than one month. Ten days of such confinement shall be a mandatory minimum sentence.

According to appellant, neither statute requires that the Commonwealth establish the prior conviction at the guilt stage of the trial; that should instead take place at sentencing. Despite the separate statutes, this Court has held that, "[a]s with all elements of a crime, the burden is on the Commonwealth to prove the prior [DUI] conviction beyond a reasonable doubt." *McBride v. Commonwealth*, 24 Va. App. 30, 33 (1997); *see also Washington v. Commonwealth*, 272 Va. 449, 457 (2006) ("Neither this Court, nor the Court of Appeals, has found [the phrase "upon conviction" in Code § 18.2-270] to direct that predicate prior convictions should be introduced only in the punishment phase."). Accordingly, the trial court did not abuse its discretion in refusing to exclude his prior conviction.

## F. Appellant's Rejected Jury Instructions

Finally, appellant assigns error to the trial court's refusal of Instruction T and Instruction U. Instructing the jury lies in the trial court's discretion, so this Court reviews denials of proposed instructions for an abuse of discretion. *Gaines v. Commonwealth*, 39 Va. App. 562, 568-69 (2003) (*en banc*). The Court, though, "view[s] the evidence in the light most favorable to the proponent of the instruction." *Lynn v. Commonwealth*, 27 Va. App. 336, 344 (1998). Nonetheless, "[i]f the principles set forth in a proposed instruction are fully and fairly covered in other instructions that have been granted, a trial court does not abuse its discretion in refusing to grant a repetitious instruction." *Fahringer v. Commonwealth*, 70 Va. App. 208, 211 (2019) (quoting *Joseph v. Commonwealth*, 249 Va. 78, 90 (1995)). And "[m]ore than a scintilla of evidence must be present to support an instruction." *Eaton v. Commonwealth*, 240 Va. 236, 255 (1990).

Jury Instruction T read, "In Virginia, sleeping in a vehicle with the engine is off [sic] and the key not in the ignition is not operating a vehicle." To support the instruction, appellant's counsel pointed to the lack of video evidence of the arrest, which he believed could have shown

the car was off, and insisted the jury could disbelieve Officer Ruby's testimony that the car was idling. The trial court rejected the instruction due to the lack of any evidence showing the car was off. Because appellant could not point to a "scintilla of evidence" to support the proposed instruction, this Court affirms the trial court's decision. *Eaton*, 240 Va. at 255.

Instruction U would have, in sum, told the jury "[t]he admission of the blood or breath test results in this case is not determinative of guilt" and that it must "make [its] determination from all the evidence presented." The trial court rejected this instruction because it believed the other instructions covered that issue by telling the jury it could, but was not required to, infer intoxication from the test results.

This Court agrees Instruction U would have been duplicative. The given instructions allowed the jury to infer intoxication from the blood test results but reiterated the jury could also consider "his manner disposition, speech, muscular movement, general appearance, or behavior." The instructions therefore "fully and fairly covered" the issue, so the trial court did not abuse its discretion. *Fahringer*, 70 Va. App. at 211.

## III. CONCLUSION

For the foregoing reasons, this Court affirms appellant's conviction.

*Affirmed*.