COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Decker, Judges Athey and White
Argued at Richmond, Virginia

PUBLISHED

QUALIK NASHAWN DAVIS

                                                        OPINION BY
v.        Record No. 0903-22-2              CHIEF JUDGE MARLA GRAFF DECKER
                                                        NOVEMBER 21, 2023

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF SPOTSYLVANIA COUNTY
William E. Glover, Judge[1]

Samantha Offutt Thames, Senior Assistant Public Defender (Virginia
Indigent Defense Commission, on briefs), for appellant.

Ken J. Baldassari, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Qualik Nashawn Davis appeals his convictions for possession of a controlled substance,

possession of a firearm by a convicted felon, transportation of a firearm by a convicted felon,

carrying of a concealed weapon by a convicted felon, and possession of a controlled substance

with a firearm on his person. *See* Code §§ 18.2-250, -308.2, -308.4. The appellant contends that

his convictions for both possession of a firearm and carrying a concealed weapon by a convicted

felon violated double jeopardy. In addition, he challenges the admission of certain evidence, the

sufficiency of the evidence, and the wording of the jury instructions. For the reasons that follow,

we affirm.

---

[1] The appellant was convicted of the crimes at issue in this appeal in two different jury
trials. Judge Ricardo Rigual presided over the April 21, 2022 trial. Judge William E. Glover
presided over the March 3, 2022 trial and the May 23, 2022 judicial sentencing for all the
charges. This opinion uses the terms "the trial court" and "the court" to refer to the Spotsylvania
County Circuit Court with regard to both trials.

BACKGROUND

On January 26, 2021, Virginia State Trooper Alexander Lubbers saw a vehicle reported as stolen traveling on the interstate. Lubbers followed it to a gas station. The trooper turned on his emergency lights, and the driver, later identified as the appellant, stopped and got out of the car. Lubbers noticed the appellant's hands were "towards his waistband" and ordered him to get back in the car. The appellant ignored the order, fled, and ran into the woods behind the gas station. No one else was in the car.

Law enforcement secured the abandoned vehicle and found a nine-millimeter pistol in a bag in the front passenger seat. About thirty minutes after the appellant's initial flight, the police apprehended him in a field "across the street." Spotsylvania Sheriff's Deputy James Moore took the appellant into custody and searched him. During the search, Moore discovered three pills, later identified as fentanyl, in a "baggy" in the appellant's pant pocket. He also found a forty-caliber handgun in the appellant's pant leg by his ankle.[2] The appellant admitted to Deputy Moore that he was a felon.

A grand jury indicted the appellant for possession of a controlled substance, possession of a firearm by a convicted felon, transportation of a firearm by a convicted felon, carrying of a concealed weapon by a convicted felon, and simultaneous possession of a Schedule I or II drug and a firearm. The appellant filed a motion to dismiss alleging a double jeopardy violation based on a single offense leading to multiple punishments. He asked the court to dismiss the charge for either possessing a weapon or carrying a concealed weapon. The trial court denied the motion.

The Commonwealth proceeded against the appellant on the charges in two separate jury trials. At the first trial, the jury convicted the appellant of possession of a firearm by a convicted

---

[2] Portions of the recording from Moore's body-worn camera were played for both juries and entered into evidence at the two trials. The video included the discovery of the gun in the appellant's pant leg.

felon, transportation of a firearm by a convicted felon, and carrying a concealed weapon by a convicted felon. *See* Code § 18.2-308.2. At the second trial, the jury convicted him of possession of a controlled substance and simultaneous possession of a controlled substance with a firearm. *See* Code §§ 18.2-250, -308.4.

In accordance with the juries' recommendations, the appellant was sentenced to a total of seven years and six months in prison, as well as $3,000 in fines.

ANALYSIS

The appellant raises seven assignments of error, falling into four categories. He argues that his federal constitutional protection against double jeopardy was violated by his convictions of two of the firearm offenses. He also challenges the admission of certain evidence. In addition, he challenges the sufficiency of the evidence proving various elements of the offenses. Finally, the appellant contends that the trial court erred by referring to him as "the defendant" instead of by his surname when giving the jury instructions. We consider each of these arguments in turn.

I. Double Jeopardy

The appellant argues that his Fifth Amendment protection against double jeopardy was violated by his convictions for both possession of a firearm by a convicted felon and concealment of a weapon by a convicted felon.

"The Fifth Amendment to the Constitution of the United States declares that no person shall 'be subject for the same offence to be twice put in jeopardy of life or limb.'" *Severance v. Commonwealth*, 295 Va. 564, 571-72, 572 n.8 (2018) (quoting U.S. Const. amend. V) (noting that the Virginia Constitution provides the same protections). This prohibition includes protection from "multiple punishments for the same offense." *Id.* at 572 (quoting *Commonwealth v. Gregg*, 295 Va. 293, 298 (2018)). "The Double Jeopardy Clause 'does not

apply where the same conduct is used to support convictions for separate and distinct crimes.'"[3] *Sandoval v. Commonwealth*, 64 Va. App. 398, 413 (2015) (quoting *Brown v. Commonwealth*, 37 Va. App. 507, 517 (2002)). An appellate court reviews de novo the abstract legal question of "whether 'multiple punishments have been imposed for the same offense in violation of the double jeopardy clause.'" *Gregg*, 295 Va. at 296 (quoting *Johnson v. Commonwealth*, 292 Va. 738, 741 (2016)). To the extent the analysis involves a determination of the facts of the particular case, the Court defers to the trial court's factual findings. *See Sheng Jie Jin v. Commonwealth*, 67 Va. App. 294, 304-05 (2017); *Bennefield v. Commonwealth*, 21 Va. App. 729, 738 (1996).

Here, the appellant was convicted of possession of a firearm by a convicted felon and carrying a concealed weapon by a convicted felon. Both convictions were based on the gun found on the appellant's person. The two convictions were rendered under Code § 18.2-308.2, which prohibits a felon from "knowingly and intentionally possess[ing] . . . any firearm" as well as "knowingly and intentionally carry[ing] about his person" a weapon "hidden from common observation."

The appellant's double jeopardy argument has two components. First, he argues generally that an individual cannot be convicted and punished twice under Code § 18.2-308.2 for the same act. Second, he contends that his convictions were based on a single continuing act and not two separate ones.

---

[3] Neither party contends that this case should be analyzed under *Blockburger v. United States*, 284 U.S. 299, 304 (1932). We likewise conclude that analysis does not apply here. *See generally Sandoval v. Commonwealth*, 64 Va. App. 398, 413 (2015) (noting that courts apply *Blockburger* "[w]hen 'the same act or transaction constitutes a violation of *two distinct statutory provisions*'" (emphasis added) (quoting *Coleman v. Commonwealth*, 261 Va. 196, 200 (2001))).

A. Code § 18.2-308.2

The first question for this Court to resolve is whether the statute permits penalizing a single act of possession of a firearm by a convicted felon in a concealed manner as a single offense or as two distinct offenses, one of possession and one of concealment, which are subject to separate punishments.

It is well settled that the same act can give rise to more than one criminal offense. *Martin v. Commonwealth*, 221 Va. 720, 723 (1981). "When considering multiple punishments for a single transaction, the controlling factor is legislative intent." *Gregg*, 295 Va. at 298 (quoting *Kelsoe v. Commonwealth*, 226 Va. 197, 199 (1983)); *see Stephens v. Commonwealth*, 263 Va. 58, 63 (2002) (explaining that in a single trial setting the double jeopardy clause "does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended" (quoting *Missouri v. Hunter*, 459 U.S. 359, 366 (1983))). In determining legislative intent, a court first looks to the plain language of the statute. *Baker v. Commonwealth*, 284 Va. 572, 576 (2012). "If the language is clear and unambiguous, [an appellate court] will assign the statute its plain meaning." *Groffel v. Commonwealth*, 70 Va. App. 681, 687 (2019) (alteration in original) (quoting *Browning-Ferris Indus. of S. Atl. v. Residents Involved in Saving the Env't, Inc.*, 254 Va. 278, 284 (1997)), *aff'd*, 299 Va. 271 (2020). "[W]e must 'give effect to the legislature's intention as expressed by the language used unless a literal interpretation of the language would result in a manifest absurdity.'" *Id.* (quoting *Conyers v. Martial Arts World of Richmond, Inc.*, 273 Va. 96, 104 (2007)). Conversely, "if the statutory language is ambiguous, the court must rely on 'the gravamen of the offense to determine the legislature's intent.'" *Id.* (quoting *Baker*, 284 Va. at 576).

Code § 18.2-308.2(A) provides, in pertinent part, that it is

> unlawful for . . . any person who has been convicted of a
> felony . . . to knowingly and intentionally possess or transport any

- 5 -

firearm or ammunition for a firearm, any stun weapon as defined by § 18.2-308.1, or any explosive material, or to knowingly and intentionally carry about his person, hidden from common observation, any weapon described in subsection A of § 18.2-308.

The statute provides that "[a]ny person who violates this section shall be guilty of a Class 6 felony."[4]  *Id.* (providing for enhanced penalties in certain circumstances).

"[T]he use of the disjunctive word 'or,' rather than the conjunctive 'and,' signifies the availability of alternative choices." *Lewis v. Commonwealth*, 267 Va. 302, 314-15 (2004) (quoting *Hedrick v. Commonwealth*, 257 Va. 328, 340 (1999)).  The use in Code § 18.2-308.2(A) of the disjunctive "or" means that a felon can violate it by either possessing a firearm or carrying a concealed weapon.  *See, e.g.*, *Coleman v. Commonwealth*, 261 Va. 196, 200 (2001) (explaining that to support a malicious wounding conviction, the Commonwealth must prove that the defendant acted with "the intent to maim, disfigure, disable, *or* kill" (quoting Code § 18.2-51 (emphasis added))); *Dezfuli v. Commonwealth*, 58 Va. App. 1, 9 (2011) ("Code § 18.2-53.1 is written in the disjunctive, prohibiting either the actual use of a firearm[] *or* the display of a firearm in a threatening manner." (quoting *Rose v. Commonwealth*, 53 Va. App. 505, 513-14 (2009))).

The plain language of the statute prohibits someone who has the requisite criminal history, as well as knowledge and intent, from possessing a firearm or ammunition, transporting a firearm or ammunition, *or* carrying a concealed weapon.  In other words, a single act violating Code § 18.2-308.2(A) constitutes a single offense.  The statutory provision that "[a]ny person who violates this section shall be guilty of a Class 6 felony" supports this interpretation because the legislature did not use language signaling that multiple punishments for a single act are

---

[4] The list of weapons in Code § 18.2-308(A) includes "any pistol, revolver, or other weapon designed or intended to propel a missile of any kind by action of an explosion of any combustible material."

- 6 -

permissible. Code § 18.2-308.2(A); *cf.* Code § 18.2-23(B) ("A violation of this subsection constitutes a separate and distinct felony.").

This conclusion, however, does not end the inquiry. The Court must next address whether the two convictions and respective punishments did not violate double jeopardy because they were based on two different acts rather than the same act. *See Groffel*, 70 Va. App. at 693-94 (differentiating between a single act of possession and independent instances of possession).

### B. Separate Acts

The pivotal question here is when one offense under Code § 18.2-308.2 ends and the next begins. The appellant believes that he simply engaged in a continuing offense that cannot serve as two separate acts resulting in two convictions. The Commonwealth, by contrast, argues that his two convictions encompassed different acts and as such do not violate double jeopardy.

Each separate act or occurrence violating Code § 18.2-308.2 constitutes a separate offense. *Baker*, 284 Va. at 577-78.[5] The gravamen of each of the firearm offenses proscribed by the statute is placing the community in "heightened danger." *Id.* at 577. Consequently, each "separate instance[]" resulting in a "heightened danger to the community[ may] be punished

---

[5] Both parties discuss *Baker* in depth. We recognize that *Baker* considered the validity of multiple convictions under Code § 18.2-308.2 in the context of statutory interpretation rather than double jeopardy. *See Baker*, 284 Va. at 575-78. Nonetheless, both analyses "fold[] back into interpreting the legislature's intent in enacting a criminal offense." *Taylor v. Commonwealth*, 77 Va. App. 149, 163 (2023). Therefore, *Baker*, despite its different posture, involves the "same inquiry" relevant here. *See id.* We also note that *Baker* addresses three convictions for possessing a firearm under Code § 18.2-308.2. *Baker*, 284 Va. at 578 (affirming the convictions where the Commonwealth established three instances of possession of the same gun on three separate days). In contrast, this case involves two alternative ways in which the Commonwealth can establish a violation of Code § 18.2-308.2: possession of a firearm and carrying it in a concealed manner. Nonetheless, just as someone can possess the same firearm in separate instances, giving rise to separate offenses, we conclude that someone can possess a firearm in one instance and carry it in a concealed manner in a second instance, similarly supporting separate charges and punishments.

- 7 -

separately." *Id.* In determining what constitutes a separate act giving rise to an additional danger to the community, relevant factors are time, location, and purpose.[6] *See id.* at 578 (affirming three possession convictions based on three identifiable instances of possession involving the same weapon); *Groffel*, 70 Va. App. at 694 (holding that Code § 18.2-308.2 does not separately penalize possession of more than one proscribed item in the same place at the same time); *cf. Lane v. Commonwealth*, 51 Va. App. 565, 577-78 (2008) (analyzing intent for possession of controlled substances in holding convictions for three counts of possession of a controlled substance violated double jeopardy).

In this case, the appellant had the forty-caliber handgun when he was driving the car and when he was stopped by the police. When he ran from law enforcement, he took it with him as he fled into the woods. The appellant was at large for thirty minutes before he was apprehended in a nearby field, at which time he was carrying the gun in a concealed manner. Although he ultimately was caught not far from his car, the appellant's act of taking the firearm with him, concealing it, and keeping it with him for the thirty minutes during which he evaded police created a heightened danger to the community separate and distinct from the danger when the trooper first encountered him in the car. *See generally Lowe v. Commonwealth*, 218 Va. 670, 677 (1977) (recognizing the increased danger to the police and the public that would result from the escape of an armed violent criminal). These facts, when viewed in the context of time, location, and purpose, sufficiently separated the appellant's actions into two distinct acts. As such, they are chargeable and punishable as two offenses under Code § 18.2-308.2, one for the possession crime and one for the concealment crime.

---

[6] Virginia is not the only jurisdiction that looks to these factors. *See, e.g.*, *Rashad v. Burt*, 108 F.3d 677, 681 (6th Cir. 1997), *limited by United States v. Forman*, 180 F.3d 766, 769-70 (6th Cir. 1999); *In re Richardson*, 273 A.3d 342, 348 (D.C. 2022); *State v. Farr*, 7 A.3d 1276, 1282 (N.H. 2010); *Commonwealth v. Rabb*, 725 N.E.2d 1036, 1043 (Mass. 2000).

Therefore, the trial court did not err by denying the appellant's pre-trial motion to dismiss one of the charges on double jeopardy grounds.

## II. Admissibility of Evidence

The appellant argues that the trial court erred in admitting certain evidence. On appeal, a trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. *Jefferson v. Commonwealth*, 298 Va. 1, 10 (2019). This "bell-shaped curve of reasonability" underpinning appellate review "rests on the venerable belief that the judge closest to the contest is the judge best able to discern where the equities lie." *Commonwealth v. Barney*, __ Va. __, __ (Mar. 16, 2023) (quoting *Sauder v. Ferguson*, 289 Va. 449, 459 (2015)). "A reviewing court can conclude that an abuse of discretion occurred only when reasonable jurists could not differ about the correct result." *Howard v. Commonwealth*, 74 Va. App. 739, 753 (2022).

A trial court must find any facts on which the admissibility of evidence depends by a preponderance of the evidence. *See Hicks v. Commonwealth*, 71 Va. App. 255, 275 (2019) (citing *Bloom v. Commonwealth*, 262 Va. 814, 821 (2001)). Its factual findings underlying admissibility decisions are "binding on appeal 'unless "plainly wrong" or without evidence to support them.'" *Id.* (quoting *Campos v. Commonwealth*, 67 Va. App. 690, 702 (2017)). In conducting our analysis, we view the evidence and all reasonable inferences fairly deducible from that evidence in the light most favorable to the Commonwealth as the party who prevailed below. *See Church v. Commonwealth*, 71 Va. App. 107, 124 (2019).

We consider each evidentiary challenge applying these well-established principles. The appellant contends that the trial court erred by admitting three different categories of evidence:

officer testimony that the two items found were "real" guns, "paperwork" from a Maryland circuit court, and information from an NCIC report.[7]

## A. Testimony About Guns

The appellant argues that the "Commonwealth did not lay the proper foundation to allow testimony that the items . . . were guns." He suggests that the testimony of the officers did not exclude the possibilities that the items were toys or replicas.

For purposes of Code §§ 18.2-308.2 and -308.4, the relevant code sections here, a "firearm" is an "instrument . . . designed, made, and intended to expel a projectile by means of an explosion." *McDaniel v. Commonwealth*, 264 Va. 429, 429 (2002) (quoting *Armstrong v. Commonwealth*, 263 Va. 573, 584 (2002)) (considering the definition of firearm under Code § 18.2-308.4); *Armstrong*, 263 Va. at 583-84 (defining firearm under Code § 18.2-308.2). To constitute a firearm under these statutes, the item does not have to be operable at the time of the offense. *McDaniel*, 264 Va. at 429; *Barlow v. Commonwealth*, 61 Va. App. 668, 671 (2013). Additionally, a witness does not have to be "qualified as an expert in order to testify about the nature of the weapon." *Murray v. Commonwealth*, 71 Va. App. 449, 457 (2020). Even a lay witness can give an opinion "if it is reasonably based upon the personal experience or observations of the witness and will aid the trier of fact in understanding the witness'[s] perceptions." Va. R. Evid. 2:701. Here, two law enforcement officers testified about the guns.

Trooper Lubbers testified that the item he found in the front seat of the vehicle was a nine-millimeter Smith and Wesson pistol. Lubbers explained that he had experience with firearms and could tell if a gun was "real." The trooper said that the item was a "real gun" and recited its serial number.

---

[7] NCIC stands for the National Crime Information Center. *See* 28 C.F.R. § 25.2 (defining "NCIC").

Deputy Moore, who likewise had experience with firearms, testified that the item he found on the appellant's person was a "forty[-]caliber Smith and Wesson handgun semiautomatic with an extended mag and . . . one round in the chamber." He specified that this item was a "real gun." Moore explained that after he recovered the gun, he "rack[ed] it" to expel the bullet that was "in the chamber." Trooper Lubbers testified about this item as well, providing its serial number and also describing it as a "real gun." The juries watched the video recording from Deputy Moore's body-worn camera that showed one of the guns when officers found it on the appellant's person. It also recorded Moore clearing the bullet from the chamber of that gun.

In testifying that the items were "real gun[s]," the two law-enforcement witnesses were simply giving their reasoned opinions. *See Murray*, 71 Va. App. at 457-58 (affirming the admission of a lay opinion that the weapon found "was 'designed to propel a missile by an action of explosion by any combustible'"). Trooper Lubbers and Deputy Moore also provided information supporting their respective opinions. They had experience with firearms, the items were identifiable as particular calibers of Smith and Wesson handguns, the guns had serial numbers, and the one found on the appellant's person had a bullet in the chamber. The officers' opinions that the items were "real gun[s]" were reasonably based on their experience and observations. Contrary to the appellant's assertion, the testimony did not have to exclude all possibility that the items were toys or replicas in order to be admissible. *See Church*, 71 Va. App. at 122-23 (noting that once the threshold for admissibility of evidence is met, the fact finder must evaluate any gaps). Consequently, the trial court did not err in admitting the testimony for the juries' consideration.

B. Maryland Paperwork

The appellant argues that the Maryland paperwork was not relevant to prove that he had a prior felony conviction. He suggests that the documents failed to meet the relevancy standard because they did not satisfy the requirements of a judgment order.

A prior conviction, however, "may be proved by *any* competent evidence." *Farmer v. Commonwealth*, 62 Va. App. 285, 290 (2013) (quoting *Perez v. Commonwealth*, 274 Va. 724, 730 (2007) (emphasis added)). "Evidence is competent" for this purpose when it "requires '[n]o conjecture or surmise . . . to reach [the] conclusion' that the defendant had indeed been convicted of the predicate offense." *Id.* (alterations in original) (quoting *Perez*, 274 Va. at 730). In contrast, evidence does not meet the threshold for admissibility if it "does not 'permit the finder of fact *to make an inference* that the defendant had been convicted of' the required prior offense." *Id.* (quoting *McMillan v. Commonwealth*, 277 Va. 11, 22-23 (2009) (emphasis added)); *see also McMillan*, 277 Va. at 22 (explaining generally that evidence is not admissible if it does not tend to prove or disprove a fact in issue).

The documents at issue here are from the Circuit Court of Prince George's County, Maryland, and identify the appellant by his full name and date of birth.[8] They reflect that the circuit court accepted the appellant's guilty plea to the charge of "Robbery with a Dangerous Weapon" and that he was convicted of that offense. They also include a copy of the grand jury indictment, which charges that the appellant "DID, WITH A DANGEROUS WEAPON, *FELONIOUSLY* ROB [THE VICTIM] OF A CELLULAR TELEPHONE AND UNITED

---

[8] A redacted version was admitted during the guilt phase of the first jury trial. An unredacted copy was admitted during the sentencing phase of the second jury trial. For purposes of this analysis, we reference only the redacted exhibit.

STATES CURRENCY, IN VIOLATION OF § 3-403 OF THE CRIMINAL LAW ARTICLE."[9]

(Emphasis added).  Maryland Criminal Law Code § 3-403, which proscribes robbery with a

dangerous weapon, provides that the offense is a felony.[10]

These documents, viewed together as a single exhibit, provided enough information to

permit a fact finder to conclude that the appellant was previously convicted of a felony.

Therefore, the trial court did not err in admitting them for the juries' consideration.

### C.  Evidence from NCIC Report

The appellant argues that the information from the NCIC report was inadmissible because

the report was not properly authenticated.  *See generally Frye v. Commonwealth*, 231 Va. 370,

387 (1986) (holding that an NCIC report is admissible if the evidence "shows the regularity of

the preparation of the records and reliance on them by their preparers or those for whom they are

prepared").  At the appellant's first trial, the Commonwealth introduced information from an

NCIC report as evidence of the appellant's prior felony conviction.

The doctrine of judicial restraint requires that appellate courts decide cases on "the best

and narrowest grounds."  *See Watson-Scott v. Commonwealth*, 298 Va. 251, 258 n.2 (2019)

(quoting *Commonwealth v. White*, 293 Va. 411, 419 (2017)).  To resolve this issue on the best

and narrowest ground, we assume without deciding that the trial court erred under *Frye* but

conclude that any error was harmless.  *See White*, 293 Va. at 419.  "There are two distinct tests

for determining harmless error.  One applies when the claim involves constitutional error and the

other when it involves non-constitutional error."  *Castillo v. Commonwealth*, 70 Va. App. 394,

---

[9] We recognize the indictment is not signed.  Nevertheless, in light of the totality of the information provided in the Maryland documents, they are sufficient to establish the appellant's prior felony conviction.

[10] The Commonwealth presented a copy of that code section to the court below without objection, and the copy was admitted into evidence.

429-30 (2019) (quoting *Graves v. Commonwealth*, 65 Va. App. 702, 711 (2016)). In this case, the non-constitutional standard applies because the assignment of error challenges the admissibility of testimony based on the rule of evidence against hearsay. *See Adams v. Commonwealth*, 275 Va. 260, 277 (2008) (applying the non-constitutional test to evaluate the harmlessness of admission of hearsay evidence obtained from the catalog of a maker of firearm accessories).

A non-constitutional error is harmless when "it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached." Code § 8.01-678. "This Court may uphold a decision on the ground that any error involved is harmless only if it can conclude, without usurping the jury's fact-finding function, 'that the error did not influence the jury[] or had but slight effect.'" *Graves*, 65 Va. App. at 712 (alteration in original) (quoting *Clay v. Commonwealth*, 262 Va. 253, 260 (2001)); *see Kotteakos v. United States*, 328 U.S. 750, 764 (1946).

We conclude that here the alleged error could not have influenced the jury or substantially affected the verdict. Substantial justice was reached, and any error in the admission of this evidence was harmless. Evidence of the appellant's prior felony was admitted at his first trial in the form of the appellant's own admission to Deputy Moore that he was a felon and the Maryland court documents that support his admission and independently show a prior conviction for a felony offense. The testimony about the appellant's prior felony conviction contained in the NCIC report matched that in the Maryland court documents.

The appellant's admission and the Maryland records were squarely before the jury for consideration and proved beyond a reasonable doubt that the appellant had a prior felony conviction. Any possible error made by the court in admitting the cumulative information from

the NCIC report was harmless given the other evidence establishing the appellant's prior felony conviction.

### III. Sufficiency of the Evidence

The appellant challenges the sufficiency of the evidence supporting his convictions. In this Court's review of the sufficiency of the evidence, we will not disturb the judgment of a jury unless it is "plainly wrong or without evidence to support it." *See* Code § 8.01-680. "If there is evidence to support the convictions, the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial." *Commonwealth v. Perkins*, 295 Va. 323, 327-28 (2018) (quoting *Courtney v. Commonwealth*, 281 Va. 363, 368 (2011)). In conducting this review, the "appellate court does not 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Barney*, __ Va. at __ (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). Instead, the "relevant question is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime[s] beyond a reasonable doubt." *Id.* at __ (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)).

Additionally, it is the function of the trier of fact, in this case the respective juries, to determine the credibility of witnesses and the weight afforded the testimony of those witnesses. *Thorne v. Commonwealth*, 66 Va. App. 248, 253 (2016). This Court does not revisit these determinations on appeal unless reasonable people, "after weighing the evidence and drawing all just inferences therefrom, could reach [only the contrary] conclusion." *Towler v. Commonwealth*, 59 Va. App. 284, 292 (2011) (quoting *Molina v. Commonwealth*, 47 Va. App. 338, 369, *aff'd*, 272 Va. 666 (2006)). Finally, evaluating the sufficiency of the evidence "does not distinguish between direct and circumstantial evidence, as the fact finder . . . 'is entitled to consider

all of the evidence, without distinction, in reaching its determination.'" *Commonwealth v. Moseley*, 293 Va. 455, 463 (2017) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 513 (2003)).

The appellant suggests three reasons why the evidence was insufficient. First, he challenges the sufficiency of the evidence proving that he had a prior felony conviction. Second, he argues that the Commonwealth did not prove that the items found were firearms. Third, he contends that it did not establish beyond a reasonable doubt that his possession of the controlled substance was knowing possession.

## A. Prior Felony Conviction

The appellant argues that the Commonwealth failed to prove he had a prior felony conviction. He suggests that the Maryland documents introduced by the Commonwealth on this element were unclear. He also contends that the Commonwealth failed to explain to the fact finder what the NCIC is or where the NCIC obtained the information in the report. As such, he argues that both the Maryland documents and the NCIC information failed to support the conclusion that he had a prior felony conviction, a necessary element for several of the offenses.

As explained above in Part II.C., evidence in the form of the appellant's admission that he was a felon and the Maryland court documents proved his prior felony conviction. In addition, Trooper Lubbers testified that the NCIC report listed the appellant's felony conviction for robbery with a deadly weapon in violation of "CR3403MD," indicating Maryland Criminal Law Code § 3-403. *See generally* Code § 19.2-324.1 (instructing this Court to consider all the evidence admitted at trial when reviewing the sufficiency of the evidence, including any evidence that was improperly admitted). The trooper also recited the case number, which matched the case number provided on the Maryland court documents. Although Lubbers did not explain who maintains the NCIC database during his testimony, he stated that he routinely relied on information contained within it for police matters.

When viewed together, the appellant's admission, the Maryland documents, and the NCIC information met the Commonwealth's burden of proving that the appellant had a previous felony conviction.

## B. Firearms

The appellant argues that the Commonwealth failed to prove that the items were firearms within the meaning of Code § 18.2-308.2.

To prove that the items were firearms, the Commonwealth was required to establish that they were instruments "designed, made, and intended to fire or expel a projectile by means of an explosion." *Armstrong*, 263 Va. at 583. As already noted, the Commonwealth was not required to show that the items were operable at the time of the offenses. *Barlow*, 61 Va. App. at 671. Whether an object "was designed, made, and intended to fire or expel a projectile by means of an explosion is a question of fact that may be proven by circumstantial evidence." *Speller v. Commonwealth*, 69 Va. App. 378, 395 (2018). Ultimately, the question of whether an item meets this definition is a factual one, and consequently the trier-of-fact's conclusion is binding on appeal unless plainly wrong or without evidence to support it. *See id.* at 387, 391, 395.

Both Trooper Lubbers and Deputy Moore had experience with firearms and identified the items. Lubbers testified the item found in the front seat of the car was a nine-millimeter Smith and Wesson. Moore testified that the item he found on the appellant's person was a "forty[-]caliber Smith and Wesson handgun semiautomatic with an extended mag." *See Jordan v. Commonwealth*, 286 Va. 153, 158 (2013) (citing the victim's identification of the item as a particular make and caliber of pistol as evidence supporting the inference that the item was a firearm within the meaning of Code § 18.2-308.2). Deputy Moore also explained that when he recovered the gun, it had "one round in the chamber," so he "rack[ed] it" to expel the bullet. *See Jones v. Commonwealth*, 277 Va. 171, 183 (2009) (listing the officer's testimony that he

- 17 -

unloaded the weapon and made it "safe" as a circumstance supporting affirmance of finding the item was a firearm within the meaning of Code § 18.2-308.2). Trooper Lubbers recited the serial number found on both weapons. *See generally* 18 U.S.C. § 923(i) (requiring licensed firearm manufacturers to include a serial number on each weapon). The two law enforcement officers opined that the items were "real gun[s]."[11] *See Jones*, 277 Va. at 183 (reciting that the officer identified the item as a "firearm" in affirming the Code § 18.2-308.2 conviction). The juries watched the footage from Moore's body-worn camera that recorded when officers recovered the gun from the appellant's ankle and when Moore cleared the bullet from the chamber.

Based on this record, the juries could reasonably conclude that the items in question were "designed, made, and intended to fire or expel a projectile by means of an explosion." *See Armstrong*, 263 Va. at 583. Therefore, the Commonwealth presented evidence sufficient to prove that the items were firearms within the meaning of Code § 18.2-308.2.

### C. Knowledge

The appellant argues that the Commonwealth failed to prove that he knew the nature of the controlled substance in his possession.

After he was detained, the appellant cooperated with the officers' investigation. In response to their questions, he identified the pills found in his pocket as Percocet. He also asked Deputy Moore if he could "put that shit in me," referring to the pills. Erin Przybylski, a forensic scientist, testified that Percocet contains oxycodone, a Schedule II controlled substance. *See* Code § 54.1-3448(1). She explained further that the pills found in the appellant's pocket contained

---

[11] At the March 3, 2022 trial, the items were displayed to the jury for identification purposes but not entered into evidence. At the April 21, 2022 trial, the gun recovered from the appellant's person was admitted into evidence and displayed to the jury. In each instance, the jury saw the respective gun or guns.

fentanyl, a different Schedule II controlled substance. *See* Code § 54.1-3448(2). Przybylski noted that the pills' pharmaceutical markings were "worn" and illegible.

"It is unlawful for any person knowingly or intentionally to possess a controlled substance . . . ." Code § 18.2-250(A) (exempting substances obtained with valid prescriptions). "[K]nowledge is an essential element of the crime." *Young v. Commonwealth*, 275 Va. 587, 591 (2008). To support a conviction, "the Commonwealth must produce evidence sufficient to support a conclusion beyond a reasonable doubt that the defendant's possession of the drug was knowing and intentional." *Id.* To this end, "[t]he Commonwealth must . . . establish that the defendant intentionally and consciously possessed [the contraband] *with knowledge of its nature and character*." *Id.* (quoting *Burton v. Commonwealth*, 215 Va. 711, 713 (1975) (emphasis added)). In other words, the statute "criminalize[s] the knowing and intentional possession of 'a controlled substance.'" *Sierra v. Commonwealth*, 59 Va. App. 770, 778 (2012). It does not require that the defendant know "the precise identity of the specific [controlled] substance he is possessing." *Id.* at 779.[12]

The appellant suggests that the Commonwealth had to prove that he knew that the substance in his possession was in fact illegal. Specifically, he claims that while he believed the pills in his pocket were Percocet, he did not know that Percocet contained a controlled substance and, therefore, he did not knowingly possess a controlled substance.

---

[12] In keeping with this principle, the jury was instructed that "the defendant does not need to know precisely what controlled substance" he possessed. Defense counsel agreed that instruction correctly represented the holding in *Sierra*, 59 Va. App. at 778. The appellant does not challenge this principle here. Therefore, we do not revisit this principle on appeal. *See generally Camann v. Commonwealth*, No. 0243-22-4, slip op. at 13, 2023 WL 2246635, at *7 (Va. Ct. App. Feb. 28, 2023) (considering whether the Commonwealth must prove an accused was aware of the number of controlled substances in his possession to be convicted of multiple possession counts), *reh'g en banc granted* (Va. Ct. App. Mar. 28, 2023).

The appellant's argument is directly contradicted by the longstanding legal maxim that ignorance of the law is no excuse. *See, e.g.*, *Snarr v. Commonwealth*, 131 Va. 814, 828 (1921). As the Supreme Court of Virginia has made clear, the "excuse of ignorance of the law" is "often made and always rejected." *Shea v. Va. State Bar*, 236 Va. 442, 444 (1988). Consequently, in proving the offense of illegal drug possession, "[t]he knowledge requirement may . . . be met by showing that the defendant knew the identity of the substance he possessed," regardless of whether he knew it was illegal.[13] *Cf. McFadden v. United States*, 576 U.S. 186, 192 (2015) (analyzing the knowledge requirement of 21 U.S.C. § 841). The relevant fact to the element of knowledge here is that the appellant believed he had Percocet, which contains a controlled substance, albeit not the controlled substance he possessed. The Commonwealth was not required to prove that he knew Percocet contained oxycodone specifically or knew that oxycodone is a controlled substance.

The appellant knowingly possessed the pills and believed they were Percocet. Percocet contains oxycodone, a controlled substance. *See* Code § 54.1-3448(1). The pills actually contained fentanyl, a different controlled substance. The evidence that the appellant believed he had Percocet, however, was enough to show that he had knowledge of the pills' nature and character as a Schedule II controlled substance. As such, it was sufficient to support a conclusion beyond a reasonable doubt that the appellant's possession of the illegal pills was knowing.[14]

---

[13] The Supreme Court of the United States explained further by giving the example of "a defendant who knows he is distributing heroin but does not know that heroin is listed on the schedules" of controlled substances. *McFadden v. United States*, 576 U.S. 186, 192 (2015). The Court reasoned that "[b]ecause ignorance of the law is typically no defense to criminal prosecution, this defendant would also be guilty of knowingly distributing 'a controlled substance.'" *Id.* (citation omitted). We note that application of the maxim that ignorance of the law is no excuse does not intrude on the principle that knowledge is an element of an offense under Code § 18.2-250 that the Commonwealth must prove.

[14] In light of this conclusion, we do not address the Commonwealth's alternative argument that the appellant's flight from law enforcement and request to ingest the pills he claimed were Percocet supported a finding of guilty knowledge.

Viewing the record in the light most favorable to the Commonwealth, the evidence was sufficient to prove the appellant knowingly possessed a controlled substance in violation of Code § 18.2-250.

For these reasons, the evidence was sufficient to support the convictions.

## IV. Jury Instructions

The appellant contends that the use of the term "defendant" in the jury instructions instead of his surname biased the juries against him and therefore did not comport with the tenet that he was innocent until proven guilty.

A "court's responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'" *Fahringer v. Commonwealth*, 70 Va. App. 208, 211 (2019) (quoting *Darnell v. Commonwealth*, 6 Va. App. 485, 488 (1988)). On appeal, a trial court's decision to give or deny requested jury instructions is reviewed for an abuse of discretion. *Barney*, __ Va. at __. The legal correctness of the jury instructions is reviewed de novo. *See Watson v. Commonwealth*, 298 Va. 197, 207 (2019) (quoting *Payne v. Commonwealth*, 292 Va. 855, 869 (2016)). *Cf. generally Fahringer*, 70 Va. App. at 211 (recognizing that "[w]hen reviewing a trial court's refusal to give a proffered jury instruction" turns on the underlying facts, the appellate court "view[s] the evidence in the light most favorable to the proponent of the instruction" (quoting *Williams v. Commonwealth*, 64 Va. App. 240, 244 (2015))). The proponent of an instruction carries the burden of showing that it is "expressed in appropriate language." *Shaikh v. Johnson*, 276 Va. 537, 546 (2008).

The appellant argues that by referencing him as "the defendant" in the jury instructions, the trial court improperly shifted the burden of proof to him and away from the Commonwealth. He cites no authority holding that a trial court must refer to a defendant by name in the jury instructions, and we are not aware of any. *See People v. Whiteaker*, 519 P.3d 1127, 1133-34

(Colo. App. 2022) (holding that the trial court did not err by referring to "the defendant" in its jury instructions), *cert. granted in part on other grounds*, No. 22SC673 (Colo. Apr. 17, 2023). The appellant does not suggest that any of the instructions are incorrect statements of the law. He simply challenges the use of the word defendant.

The record here demonstrates that the trial court did not place the burden of proof on the appellant. In fact, it instructed just the opposite. Simply referring to the appellant as the defendant did not shift the burden of proof. The term "defendant," in a criminal proceeding, means nothing more than the "person . . . accused" of the crime or crimes. *Defendant*, *Black's Law Dictionary* (11th ed. 2019). Consistent with this definition, the prosecutor and the trial court referenced the appellant without objection as "the defendant" at various times during the proceedings. The court instructed both juries that "[t]he defendant [wa]s presumed to be innocent," the Commonwealth had to prove his guilt "beyond a reasonable doubt," and the jury could convict him only if it "believe[d] from all the evidence" that he was "guilty beyond a reasonable doubt."[15] We presume that the juries followed these instructions. *See Jones v. Commonwealth*, 71 Va. App. 70, 92 (2019).

Accordingly, the trial court did not abuse its discretion by referring to the appellant as "the defendant" in the jury instructions.

CONCLUSION

The two convictions under Code § 18.2-308.2 involving the same gun do not violate the appellant's constitutional protection against double jeopardy. The trial court acted within its discretion by admitting officer testimony that the guns were "real." It also properly admitted the Maryland court documents, and any error in admitting the information from the NCIC report was

---

[15] These instructions were in accordance with the Virginia Criminal Model Jury Instructions, which use the term "defendant." *See* Model Jury Instrs.—Crim. Nos. 2.100, 2.400.

harmless. Further, the evidence was sufficient to prove that the appellant had previously been convicted of a felony, that each gun in his possession met the applicable legal definition of a firearm, and that his possession of a controlled substance was knowing. Finally, the court did not err by rejecting the appellant's suggested jury instruction wording to refer to him by name instead of as "the defendant." Consequently, we affirm the convictions.

*Affirmed.*