PUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Chafin and AtLee
Argued at Lexington, Virginia

JUSTIN GODFREY FAHRINGER

v.        Record No. 0370-18-3

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE TERESA M. CHAFIN
APRIL 30, 2019

FROM THE CIRCUIT COURT OF THE CITY OF RADFORD
Josiah T. Showalter, Jr., Judge

Matthew B. Roberts (Davidson & Kitzmann, PLC, on brief), for
appellant.

Virginia B. Theisen, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.

Following a jury trial, Justin Fahringer was convicted of fourteen felony sexual crimes,

including abduction with intent to defile, rape, forcible sodomy, conspiracy to commit the offenses,

and participation in the offenses as a principal in the second degree.  On appeal, Fahringer contends

that the trial court erred in refusing to give a proffered jury instruction regarding the consideration of

prior sexual conduct between Fahringer and the victim.  He maintains that the act of kissing fits the

legal definition of "sexual conduct."  For the following reasons, we affirm Fahringer's convictions.

I.  STANDARD OF REVIEW AND BACKGROUND

"A reviewing court's responsibility in reviewing jury instructions is 'to see that the law

has been clearly stated and that the instructions cover all issues which the evidence fairly

raises.'"  Darnell v. Commonwealth, 6 Va. App. 485, 488 (1988) (quoting Swisher v. Swisher,

223 Va. 499, 503 (1982)).  This Court reviews the trial court's decisions in giving or denying

jury instructions under an abuse of discretion standard.  Gaines v. Commonwealth, 39 Va. App.

562, 568 (2003) (*en banc*). "If the principles set forth in a proposed instruction are fully and fairly covered in other instructions that have been granted, a trial court does not abuse its discretion in refusing to grant a repetitious instruction." Joseph v. Commonwealth, 249 Va. 78, 90 (1995). We review *de novo*, however, whether a proffered instruction states the law with accuracy. Sarafin v. Commonwealth, 288 Va. 320, 326 (2014). A proffered jury instruction "must be supported by 'more than a scintilla' of evidence." Graves v. Commonwealth, 65 Va. App. 702, 708 (2016) (quoting Turman v. Commonwealth, 276 Va. 558, 564 (2008)). "When reviewing a trial court's refusal to give a proffered jury instruction, we view the evidence in the light most favorable to the proponent of the instruction," in this case Fahringer. Williams v. Commonwealth, 64 Va. App. 240, 244 (2015) (quoting Commonwealth v. Vaughn, 263 Va. 31, 33 (2002)). So viewed, the facts are as follows.

On October 1, 2016, K.C., a thirty-four-year-old female, went alone to Sharkey's Bar in Radford, where she ordered a pitcher of beer and a sandwich. She was playing pool when she met Fahringer, Matthew Moles, and James Smith. Fahringer told K.C. that Moles thought she was cute. After some time, Fahringer suggested that they leave Sharkey's and continue drinking at Smith's apartment. K.C., Moles, and Fahringer proceeded to walk across the Radford University campus in route to Smith's apartment.

At approximately 1:14 a.m. on the morning of October 2, 2016, Officer Scott Isom of the Radford University Police stopped Fahringer, Moles, and K.C.[1] Isom observed that the two men assisted K.C. in walking. K.C. had trouble standing during the encounter and eventually sat on the sidewalk. She did, however, talk to Isom and was able to give him her age. Isom allowed them to leave with the caveat of finding a ride home. Fahringer called James Tolbert to pick

---

[1] The entire interaction was recorded using Officer Isom's body camera. The video of the interaction was admitted into evidence at trial.

them up approximately five minutes later. Tolbert testified that he drove all three individuals to Smith's apartment, which was located above the Radford Deli Mart. During the drive, he testified that "the female was kissing on both of them, like I don't know if it was necessarily on the lips or on the cheek, but I remember her kissing both of them."

Smith testified that after Fahringer, Moles, and K.C. arrived at his apartment, he observed "sexual things going on" between K.C. and both Fahringer and Moles. He observed K.C. kiss "both [Fahringer and Moles] at some point or another." Smith further stated that he saw K.C. and Fahringer go into a bathroom together and remain there for fifteen to twenty minutes. Smith's girlfriend denied seeing K.C. kiss either man, but did observe K.C. going back and forth from "kind of like laying on [Fahringer]" to "sitting on [Moles's] lap." While at the apartment, Moles propositioned K.C. for sex, and K.C. complained to Fahringer about Moles's advances.

Upon leaving Smith's apartment, Fahringer and Moles dragged K.C., who was nearly unconscious, into an alcove behind the Deli Mart. A surveillance video that was approximately thirty minutes long was introduced into evidence. The video showed that the men removed K.C.'s shoes, pants, and underwear. They then took turns engaging in sexual intercourse and sodomy with her. At times both of K.C.'s feet were off the ground. K.C. testified that she told the men to stop because they were hurting her. She further testified that she was fading in and out of consciousness during the incident.

Two college students walked by while the incident was in progress. After one of the individuals told the men to stop to no avail, the other individual called the Radford Police Department. Officer Mark Mills responded to the call. Once on the scene, he saw K.C. bent over. Fahringer had his groin region against K.C.'s backside while K.C.'s mouth was at Moles's groin region. Moles was holding K.C.'s head with his hands. Mills ordered the men to the ground. Mills spoke to K.C., immediately recognizing that she was extremely intoxicated. She

was given a preliminary breath test, which registered a .23. She was placed in a police car. Another officer, Detective Jerry Holdaway, arrived several minutes later. He testified that K.C. still appeared intoxicated and "reeked" of alcohol. K.C. was taken home. She was taken to the hospital the next morning for a forensic examination.

Fahringer was interviewed by the police twice on the morning of October 2, 2016. During the first interview, he stated that he, Moles, and K.C. were just "fooling around" in the alley. He denied that he had his pants down and denied that he touched K.C. below the waist. He specifically denied that his penis had been inside of K.C. He further denied that any oral sex had occurred.

During the second interview, Fahringer stated that Moles had intercourse with K.C., but he did not. Fahringer admitted that both he and Moles had oral sex with K.C. He insisted that K.C. was in control of her faculties and that the activity between them was consensual.

At trial, Fahringer argued that he was entitled to a jury instruction on prior sexual conduct of the victim because evidence had been presented that Fahringer and K.C. had been observed "kissing reasonably near the time of the offense alleged." The Commonwealth contended that K.C. was so intoxicated that she was incapable of consenting to sex and asserted that Fahringer's proffered jury instruction on prior sexual conduct was not supported by the evidence. Specifically, the Commonwealth argued that "kissing" does not constitute "prior sexual conduct." The trial court denied the instruction. Fahringer now appeals to this Court.

## II. ANALYSIS

Fahringer's sole contention on appeal is that the trial court wrongfully refused to give a proffered jury instruction regarding the consideration of prior sexual conduct between Fahringer and K.C. He specifically argues that the act of kissing fits the legal definition of "sexual conduct." For the reasons that follow, we affirm the decision of the trial court.

Fahringer proffered, and the trial court refused, the following instruction, which mirrors Virginia Model Jury Instruction 44.720:

> In considering whether the sexual intercourse was accomplished through force, threat, or intimidation, or through the use of the complaining witness's mental incapacity or physical helplessness, you may consider prior acts of sexual conduct with the complaining witness occurring reasonably near the time of the crime charged.

This jury instruction clearly tracks the language of Code § 18.2-67.7 and Virginia Rule of Evidence 2:412.[2]

Code § 18.2-67.7(A) provides, in pertinent part, that "[i]n prosecutions under this article, . . . general reputation or opinion evidence of the complaining witness's unchaste character or prior sexual conduct shall not be admitted." This code section is referred to as Virginia's "Rape Shield Law." Neeley v. Commonwealth, 17 Va. App. 349, 353-54 (1993). The purpose of Virginia's Rape Shield Law is to "exclude evidence in sexual assault cases of the 'general reputation . . . of the complaining witness's unchaste character or prior sexual conduct.'" League v. Commonwealth, 9 Va. App. 199, 206 (1989) (quoting Winfield v. Commonwealth, 225 Va. 211, 217-19 (1983)). Code § 18.2-67.7 incorporates an exception for evidence of "specific instances" of "prior sexual conduct . . . between the complaining witness and the accused" if the

---

[2] Virginia Rule of Evidence 2:412 states in pertinent part that

> general reputation or opinion evidence of the complaining witness' unchaste character or prior sexual conduct shall not be admitted. Unless the complaining witness voluntarily agrees otherwise, evidence of specific instances of his or her prior sexual conduct shall be admitted only if it is relevant and is . . . [e]vidence of sexual conduct between the complaining witness and the accused offered to support a contention that the alleged offense was not accomplished by force, threat or intimidation or through the use of the complaining witness' mental incapacity or physical helplessness, provided that the sexual conduct occurred within a period of time reasonably proximate to the offense charged under the circumstances of this case.

evidence is relevant and is "offered to support a contention that the alleged offense was not accomplished by force, threat or intimidation or through the use of the complaining witness's mental incapacity or physical helplessness." Code § 18.2-67.7(A)(2). Additionally, the evidence must concern conduct that "occurred within a period of time reasonably proximate to the offense charged under the circumstances." Id.

In order to determine whether the trial court erroneously denied the proffered jury instruction at issue, we must first determine whether the act of kissing fits within the definition of "sexual conduct" as contemplated by Code § 18.2-67.7.

Fahringer contends that the act of kissing fits the legal definition of "sexual conduct" as used in Code § 18.2-67.7. However, Code § 18.2-67.7 does not define "sexual conduct." Consequently, we are guided by principles of statutory construction in construing the statute.

> We recognize that "it is our function to interpret the meaning of the words in controversy as intended by the legislature." Tiller v. Commonwealth, 193 Va. 418, 420 (1952). However, "[u]nless there is ambiguity in a statute, there is no need for interpretation, for the province of construction lies wholly within the domain of ambiguity." Id. "Words are ambiguous if they admit to 'being understood in more than one way[,]' . . . refer to 'two or more things simultaneously[,]' . . . are 'difficult to comprehend,' 'of doubtful import,' or lack 'clearness and definiteness.'" Diggs v. Commonwealth, 6 Va. App. 300, 301-02 (1988) (quoting Brown v. Lukhard, 229 Va. 316, 321 (1985)).

Gilliam v. Commonwealth, 21 Va. App. 519, 522 (1996).

"Well-established 'principles of statutory construction require us to ascertain and give effect to the legislative intent.'" Id. (quoting Branch v. Commonwealth, 14 Va. App. 836, 839 (1992)). "The plain, obvious, and rational meaning of a statute is always preferred to any curious, narrow or strained construction." Id. at 522-23 (quoting Branch, 14 Va. App. at 839). "Because the Code of Virginia is 'one body of law,' we may consult other statutes 'using the

same phraseology' to assist us in divining legislative intent." Id. at 523 (quoting Branch, 14 Va. App. at 839).

It becomes evident when examining the Code of Virginia that the phrase "sexual conduct" contemplates a broader definition than sexual intercourse. As stated above, the term "sexual conduct" is not defined by Code § 18.2-67.7. Nevertheless, Code § 18.2-67.10(6) gives us an idea of what the term "sexual" indicates within the meaning of the Code. Code § 18.2-67.10(6) defines "sexual abuse" as

> [A]n act committed with the intent to sexually molest, arouse, or gratify any person, where:
>
> a. The accused intentionally touches the complaining witness's intimate parts or material directly covering such intimate parts;
>
> b. The accused forces the complaining witness to touch the accused's, the witness's own, or another person's intimate parts or material directly covering such intimate parts;
>
> c. If the complaining witness is under the age of 13, the accused causes or assists the complaining witness to touch the accused's, the witness's own, or another person's intimate parts or material directly covering such intimate parts; or
>
> d. The accused forces another person to touch the complaining witness's intimate parts or material directly covering such intimate parts.

Therefore, the term "sexual" as used in this section anticipates the involvement of "intimate parts," which includes "the genitalia, anus, groin, breast, or buttocks of any person." Code § 18.2-67.10(2). Kissing is not mentioned in either the definition of "sexual abuse" or "intimate parts."

Notably, the term "sexual conduct" is specifically defined in the Code. Code §§ 18.2-390 through 18.2-391.1 prohibit the distribution and acquisition of materials that could be considered obscene to juveniles. Code § 18.2-390(3) defines "sexual conduct" as

> actual or explicitly simulated acts of masturbation, homosexuality, sexual intercourse, or physical contact in an act of apparent sexual stimulation or gratification with a person's clothed or unclothed genitals, pubic area, buttocks or, if such be female, breast.

While the definition of "sexual conduct" at issue in Code § 18.2-390(3) concerns the distribution of materials containing potentially obscene images and not "sexual conduct" between two specific persons, we can nevertheless glean a great deal about what the legislature means when it uses the term in a statute. Much like the definition of "sexual abuse" in Code § 18.2-67.10(6), this definition of "sexual conduct" anticipates the involvement of intimate parts. "Kissing" is in no way included in this definition of "sexual conduct." Additionally, there is no evidence that K.C. and Fahringer had any contact with one another's "intimate parts" prior to the incident at issue on appeal.

In support of Fahringer's defense of consent on the part of the victim, he recounted to the jury during summation that a witness testified that K.C. had kissed Fahringer prior to the attack.

> While it may be appropriate during closing argument for each party to focus the jurors' attention on the evidence it prefers them to consider during their deliberations, it is not appropriate for the court to do so in a jury instruction because, under the law of Virginia, the jury is free to weigh the evidence how it chooses.

Payne v. Commonwealth, 292 Va. 855, 871 (2016). "It is a fundamental principle that '[a]lthough an instruction may correctly state the law, it should not be given if it is inapplicable to the facts in evidence . . . [and] might confuse or distract the jury.'" Morse v. Commonwealth, 17 Va. App. 627, 633 (1994) (quoting King v. Commonwealth, 2 Va. App. 708, 711 (1986)). "Further, an instruction 'may not single out for emphasis a part of the evidence tending to establish a particular fact.'" Graves, 65 Va. App. at 708 (quoting Terry v. Commonwealth, 5

Va. App. 167, 170 (1987)).  Because there was no evidence of any actions approaching sexual conduct between K.C. and appellant, we find that the trial court did not err in rejecting Fahringer's proffered jury instruction regarding the consideration of prior sexual conduct between Fahringer and K.C.

III.  CONCLUSION

For the above-stated reasons, we hold that the trial court did not err in refusing Fahringer's proffered jury instruction concerning evidence of prior sexual conduct between the victim and Fahringer.  Therefore, we affirm Fahringer's convictions.

Affirmed.