COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Fulton, Friedman and Chaney
Argued at Norfolk, Virginia


CURTIS ANTONIO MITCHELL

v.       Record No. 0879-22-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE FRANK K. FRIEDMAN
OCTOBER 24, 2023


FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
Joel P. Crowe, Judge

Althea L. Mease, Public Defender, for appellant.

David A. Mick, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Following a jury trial, the Circuit Court of the City of Portsmouth convicted Curtis Antonio

Mitchell of voluntary manslaughter. Mitchell contends on appeal that the trial court erred by

rejecting two of his proffered jury instructions and by refusing one of his proffered jury voir dire

questions. For the following reasons, we disagree and affirm the trial court's judgment.

BACKGROUND

On appeal, we view "the evidence in the light most favorable to the Commonwealth, the

prevailing party in the circuit court, and we accord the Commonwealth the benefit of all reasonable

inferences deducible from the evidence." *Britt v. Commonwealth*, 276 Va. 569, 573 (2008).

In September 2020, Sheniqua Gilchrist's boyfriend, Phillip Goston, became upset with

Gilchrist because she had "liked" another man's picture on Facebook. The two argued over the

phone, and Goston requested that Gilchrist return a car that he had rented for her. Later that

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

evening, Gilchrist saw Goston "messing with" the car and called Mitchell, the father of her child. Gilchrist confronted Goston, who was attempting to remove the car's tires, and asked him to leave.

Mitchell arrived at the residence shortly after Gilchrist's call and approached Goston. Gilchrist continued to argue with Goston while he removed one of the tires and put it in the car's trunk. Mitchell attempted to intervene, and Goston pushed Mitchell's hands away and "shoulder checked" him. In response, Mitchell drew his firearm and shot Goston twice in the chest. As Goston retreated to his car, Mitchell fired a third shot. Goston, who was unarmed, died from the gunshot wounds.

Portsmouth Police Officer Pierce responded to the scene after a neighbor called the police. Officer Pierce saw Mitchell standing over Goston's bloody body, and Mitchell told the officer, "I did it, I shot him." Later, in an interview with Detective Bloodworth, Mitchell admitted that he was angry and that he intended to kill Goston. Mitchell stated that he knew Gilchrist was dating Goston. Mitchell had spoken on the phone with Goston, but he had not met him until the night of the shooting. Mitchell believed that if they ever saw each other, Goston would use a weapon.

Mitchell testified that when he arrived at Gilchrist's residence in response to her call, he saw Goston attempting to remove the tires from the rental car. He described the confrontation and testified that he believed Goston was reaching for a weapon. He admitted that he initially lied to the police by telling them that Gilchrist had not called him, but he explained that he lied to protect her.

The trial court refused two jury instructions that Mitchell proposed. His proposed Instruction B stated: "It does not matter if the belief later turns out to be erroneous that the defendant was in any real danger. As long as the defendant has reasonable grounds for believing that he was in danger of death or serious bodily harm, the killing is justifiable." Proposed Instruction C stated: "If a person stays at the place where a crime was committed, this creates no presumption that the

person is innocent of having committed the crime. However, it is a circumstance which you may consider along with the other evidence."

The trial court refused Instruction B, finding that there were two other instructions addressing self-defense and that those instructions clearly and correctly stated the law. Similarly, the trial court rejected Instruction C, finding that it was duplicative and unnecessary.

During voir dire, Mitchell sought to ask the venire: "Does anyone here believe that no one other than a police officer should be allowed to carry firearms out in the open in public? If yes, would you hold a person who did responsible for anything bad that happened with the firearm regardless of the circumstance?" The trial court rejected the question, finding it open-ended and duplicative of question ten which asked the prospective jurors, "[d]oes anyone on the panel have any strong feelings regarding firearms that would prevent you from being fair and impartial in a case involving a gun?" Defense counsel acknowledged that he requested question nine, the one the trial court refused, knowing it overlapped with question ten and that if the court had granted question nine, he would not have requested question ten.

The jury found Mitchell guilty of voluntary manslaughter. Mitchell appeals.

ANALYSIS

Proposed Instructions

Mitchell asserts that the trial court erred by rejecting his proposed jury instructions. We review a trial court's decisions in giving and denying requested jury instructions for abuse of discretion. *Barney v. Commonwealth*, 69 Va. App. 604, 609 (2019). "A reviewing court's responsibility in reviewing jury instructions is to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises." *Fahringer v. Commonwealth*, 70 Va. App. 208, 211 (2019) (quoting *Darnell v. Commonwealth*, 6 Va. App. 485, 488 (1988)); *see Payne v. Commonwealth*, 292 Va. 855, 869 (2016). "Whether to give or deny jury

instructions 'rest[s] in the sound discretion of the trial court.'" *Hilton v. Commonwealth*, 293 Va. 293, 302 (2017) (quoting *Cooper v. Commonwealth*, 277 Va. 377, 381 (2009)). "When granted instructions fully and fairly cover a principle of law, a trial court does not abuse its discretion in refusing another instruction relating to the same legal principle." *Id.* (quoting *Daniels v. Commonwealth*, 275 Va. 460, 466 (2008)). "Parties are not entitled to redundant instructions covering principles of law already addressed in other instructions." *Payne v. Commonwealth*, 65 Va. App. 194, 213 (2015). On appeal, "we view the evidence with respect to the refused instruction in the light most favorable to the defendant." *Boone v. Commonwealth*, 14 Va. App. 130, 131 (1992).

As noted above, proposed Instruction B stated: "It does not matter if the belief later turns out to be erroneous that the defendant was in any real danger. As long as the defendant has reasonable grounds for believing that he was in danger of death or serious bodily harm, the killing is justifiable."

The trial court did not employ this language. Instead, the trial court instructed the jury on self-defense in two instructions, informing the jury that if Mitchell "reasonably feared, under the circumstances as they appeared to him, that he was in danger of harm, then the defendant had the right to use such force as was reasonably necessary to protect himself from the threatened harm." The given instructions correctly stated the law on self-defense, and Mitchell's proffered instruction was merely duplicative. *See Wells v. Commonwealth*, 60 Va. App. 111, 122-23 (2012) ("When granted instructions fully state the principles of law on a subject, a trial court is not required to grant additional instructions thereon." (quoting *Medlar v. Mohan*, 242 Va. 162, 168 (1991))).

The trial court similarly did not abuse its discretion by declining to give proposed Instruction C which stated: "If a person stays at the place where a crime was committed, this

creates no presumption that the person is innocent of having committed the crime. However, it is a circumstance which you may consider along with the other evidence." Mitchell's Instruction C simply restated that evidence of his remaining on the scene could be considered; a statement of law that was adequately covered by already granted instructions. The jury was correctly instructed that they were the "judges of the facts, the credibility of the witnesses, and the weight of the evidence" and that "[t]he statements presented to you as having been made by the defendant are submitted for your consideration along with all the other evidence. The weight, value, credibility, and reliability of those statements are questions for your determination." And further that the "evidence as a whole must exclude every reasonable theory of innocence." The granted instructions properly instructed the jury on how to view all of the evidence and what evidence could be considered. *Hilton*, 293 Va. at 302.

Moreover, Mitchell's proposed instruction sought to focus the jury on specific evidence. A trial court, in granting instructions, should be careful not to "single out for emphasis a part of the evidence tending to establish a particular fact." *Terry v. Commonwealth*, 5 Va. App. 167, 170 (1987) (quoting *Woods v. Commonwealth*, 171 Va. 543, 548 (1938)). Here, Mitchell was free to argue his reading of the facts to the jury in closing, but the trial court did not err in refusing to permit the instructions to focus on isolated facts. *See Payne*, 292 Va. at 871; *Fahringer*, 70 Va. App. at 218.

Accordingly, we find no abuse of discretion in the trial court's rejection of the two proffered instructions.

### Voir Dire Question

Mitchell next asserts that his refused voir dire question would have allowed him "to ascertain if any of the jurors bore a strong opinion that would prevent them from fully considering the law of self defense, which would require them to refrain from 'holding

[Mitchell] accountable' if the circumstances proved that [he] was reasonably in fear of a deadly threat." During voir dire

> [t]he court and counsel for either party shall have the right to examine under oath any person who is called as a juror therein and shall have the right to ask such person or juror directly any relevant question to ascertain whether he is related to either party, or has any interest in the cause, or has expressed or formed any opinion, or is sensible of any bias or prejudice therein[.]

Code § 8.01-358. This right to examine, however, is not boundless, and a criminal defendant has "no absolute right to have the court ask every question he propounded." *Bassett v. Commonwealth*, 222 Va. 844, 853 (1981). All the trial court must do is to "afford a party a 'full and fair' opportunity to ascertain whether prospective jurors 'stand indifferent in the cause,'" and "it is within the trial court's sound discretion to decide when a defendant has had such an opportunity." *Thomas v. Commonwealth*, 279 Va. 131, 162-63 (2010) (quoting *Buchanan v. Commonwealth*, 238 Va. 389, 401 (1989)). Where the defense had ample opportunity "to ask relevant questions and where the questions actually propounded by the trial court were sufficient to preserve a defendant's right to trial by a fair and impartial jury, we will generally not reverse a trial court's decision to limit or disallow certain questions from defense counsel." *Id.* at 163 (quoting *Buchanan*, 238 Va. at 401).

Here, through voir dire question ten, which was permitted, counsel advised the venire that there would be evidence presented that Mitchell "essentially always carries a firearm; so asking that, with that in mind, is there anyone here who has a strong feeling about firearms and guns that you think would make it difficult for you to be fair and impartial here today?" Defense counsel desired the granting of a broader voir dire question; proposed question nine stated: "Does anyone here believe that no one other than a police officer should be allowed to carry firearms out in the open in public? If yes, would you hold a person who did responsible for anything bad that happened with the firearm regardless of the circumstance?"

- 6 -

The trial court found question nine to be "open-ended" and also duplicative of question ten which was granted. The trial court did not abuse its discretion in denying Mitchell's proposed voir dire question nine, particularly where another permitted question covered similar ground. *See Thomas*, 279 Va. at 162-63 (a defendant does not have a "right to have the court ask every question he propound[s]" or to question the jury on matters that are already "amply covered by other questions").

## CONCLUSION

For the foregoing reasons, we find no abuse of discretion in the trial court's refusal of Mitchell's proposed jury instructions or voir dire question. We affirm the trial court's judgment.

*Affirmed.*