COURT OF APPEALS OF VIRGINIA

Present:   Judges Huff, Malveaux and Chaney
Argued by videoconference

GREGORIO MARIA PAONE

MEMORANDUM OPINION[*] BY
v.        Record No. 1426-22-3          JUDGE VERNIDA R. CHANEY
JUNE 18, 2024

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
Andrew S. Baugher, Judge

(David R. Martin; Law Office of David R. Martin, PLLC, on brief),
for appellant.  Appellant submitting on brief.

William K. Hamilton, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.

Following a jury trial, Gregorio Maria Paone appeals his conviction for assault and battery of a family or household member.  Paone contends that the circuit court erred in (1) allowing testimony from a Commonwealth's witness when the Commonwealth failed to disclose in advance the exculpatory portions of the witness's testimony and the exculpatory statements the witness received from Paone; (2) rejecting Paone's proposed jury instruction regarding self-defense; and (3) ruling that the evidence was sufficient to find that the alleged battery was not justified or excused, and sufficient to support a conviction.  For the following reasons, this Court affirms the trial court's judgment.

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

BACKGROUND

"On appeal, we review the facts in the light most favorable to the Commonwealth, the prevailing party below." *Sarka v. Commonwealth*, 73 Va. App. 56, 59 (2021).

On the evening of October 30, 2021, Paone became verbally aggressive during an argument with D.M., with whom he resided.[1] D.M. retreated to the bedroom, locked Paone out, and told him to "please sleep downstairs." Paone went downstairs to make a phone call; when he returned, he was "enraged" and "demanded that [she] open the door." When D.M. refused, he "pound[ed] on the door with a water bottle," making several holes.

D.M. opened the bedroom door after Paone said he would take his belongings and leave. As D.M. removed Paone's clothes from the closet, he continued arguing and calling her names— "bitch," "whore," and a racial slur. Then D.M. threw some of Paone's expensive suits and ties on the ground. Then, Paone became irate and pushed D.M. into the back of the closet, causing her arm to hit a metallic closet rack and bruising it.

In response, D.M. shoved Paone in the chest. He then grabbed her, pushed her to the ground, and punched her three times—in the eye, nose, and stomach. This caused bleeding from D.M.'s eye, and she felt intense pain.

At trial, Paone testified to a markedly different version of events wherein D.M. was the principal aggressor—both physically and verbally. Paone admitted hitting, pushing, and restraining D.M. but insisted that he acted in response to her aggressive acts.

Rockingham County Sheriff's Deputy David Dodson, who had responded to the scene, testified that Paone told him that the physical altercation began when he pushed D.M. after she

---

[1] To protect the victim's privacy, this opinion refers to her by her initials.

threw his expensive ties on the floor. Deputy Dodson testified that he saw a "slight red mark" on Paone's face but did not see any blood.

Harrisonburg volunteer EMT Dylan Kelly responded to the scene and attended to D.M. and Paone. Kelly observed bruising along the right side of D.M.'s face and to the back of her head. He also observed that "the whites of her eyes were entirely red and bloody." Kelly determined that D.M. needed to be transported to the hospital.

When Kelly examined Paone, Paone told him that D.M. had shoved him. Paone reported that he felt some pain in his back but that he "was predominately feeling mental pain." Kelly did not observe any physical injuries or marks on Paone. Kelly offered Paone medical assistance and called a second ambulance, but Paone refused further medical care.

Paone objected to Kelly's testimony recounting Paone's statements that he had been pushed into a closet and that he felt back pain. He argued that these statements were exculpatory and he had a "due process right to know" about them before trial. The trial court overruled this objection.

The trial court instructed the jury that to convict Paone, the Commonwealth must prove beyond a reasonable doubt that Paone "committed an assault and battery against" D.M. and that D.M. was Paone's "household member." The jury was instructed that if it found that the Commonwealth "failed to prove" these elements beyond a reasonable doubt, it must acquit Paone. The trial court then gave separate instructions on justifiable and excusable self-defense. In both instructions, the trial court directed that if the jury found that Paone acted in self-defense, it must acquit him.

Paone proffered an instruction that included the elements of the offense but added: "If you find from the evidence that the Commonwealth has proved beyond a reasonable doubt each of the above elements of the crime as charged, but you also find that the defendant acted in self-defense,

- 3 -

then you shall find the defendant not guilty." The trial court declined to give Paone's proposed instruction, indicating that it feared the instruction "could be misleading."

After the jury convicted Paone, he moved to set aside the verdict, asserting that the evidence was insufficient to convict him. He also argued that the trial court "erred in permitting" Kelly's exculpatory testimony about Paone's statements because the Commonwealth did not disclose that testimony before trial in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).

The trial court denied the motion to set aside, finding sufficient evidence to support the verdict. Regarding the *Brady* claim, the trial court concluded that "pre-trial disclosure of th[e] oral statement would not have changed the weight or substance of the evidence offered at trial. It all came out and the jury" convicted Paone.

Paone now appeals, challenging the trial court's refusal to exclude Kelly's testimony under *Brady*, its refusal to give Paone's proposed jury instruction, and the sufficiency of the evidence.

ANALYSIS

I. The *Brady* Violation

Paone contends that the trial court violated his due process rights under *Brady v. Maryland* by admitting Kelly's testimony about Paone's statements. He argues that the statements were exculpatory and the Commonwealth's failure to disclose them before trial was "an impediment to presenting the exculpatory evidence and the self-defense argument." Paone has not established a *Brady* violation.[2]

"Under *Brady*, due process requires that the prosecution disclose evidence favorable to the accused that is material to guilt or punishment." *Church v. Commonwealth*, 71 Va. App. 107, 117 (2019). To prevail on a *Brady* claim, the defendant bears the burden of establishing three elements.

---

[2] Paone does not argue on appeal that the Commonwealth violated any applicable discovery rules.

*Id.* "First, the prosecution must have suppressed the evidence, either purposefully or inadvertently." *Id.* Next, the relevant evidence must be "favorable" to the defendant, "either because it is exculpatory, or because it is impeaching." *Id.* (quoting *Commonwealth v. Tuma*, 285 Va. 629, 634 (2013)). Finally, "the evidence must be 'material' under *Brady*, meaning 'there is a reasonable probability that had the evidence been disclosed, the result of the proceeding would have been different.'" *Id.* (quoting *Tuma*, 285 Va. at 634-35). A "reasonable probability" means that "the likelihood of a different result is great enough to 'undermine[] confidence in the outcome of the trial.'" *Smith v. Cain*, 565 U.S. 73, 75 (2012) (alteration in original) (quoting *Kyles v. Whitley*, 514 U.S. 419, 434 (1995)).

We conclude that Paone has failed to show the materiality of Kelly's testimony. Paone contends that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different," but fails to offer more. The Commonwealth elicited, and the jury heard, Kelly's testimony about Paone's statements. As stated by the trial court, "it all came out and the jury ruled against" Paone. Thus, the jury would have considered the alleged exculpatory evidence in its verdict.

Further, Paone has not demonstrated that the alleged failure of the Commonwealth to disclose Kelly's testimony before trial prejudiced his ability to present his defense. He does not argue that he would have pursued a different trial strategy had he known of Kelly's testimony; indeed, he maintains that Kelly's testimony supports his assertion of self-defense. *See Church*, 71 Va. App. at 118-19. Paone also does not contend that earlier disclosure would have facilitated the discovery of any additional favorable evidence. Finally, he does not argue that pretrial disclosure would have facilitated further cross-examination or impeachment of Kelly.[3] This Court has held

---

[3] Additionally, Paone fails to explain how excluding evidence he claims was exculpatory would have yielded a more favorable result.

that mid-trial disclosure of impeachment evidence does not violate *Brady* if "the defendant has 'sufficient time to make use of it at trial.'" *See id.* at 119-20. Moreover, upon disclosure, Paone did not seek a recess or continuance before cross-examining Kelly. *See id.* at 120-21. In sum, any failure by the Commonwealth to disclose Kelly's testimony before trial does not undermine confidence in the outcome of the trial. Thus, Paone's *Brady* claim fails.

II. Sufficiency of the Evidence

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

Assault and battery against a family or household member is a Class 1 misdemeanor. Code § 18.2-57.2(A). "Any person who commits an assault and battery against a family or household member is guilty of a Class 1 misdemeanor." *Id.* "A battery is the 'willful or unlawful touching of the person of another by the assailant, or by some object set in motion by him.'" *Woodson v. Commonwealth*, 74 Va. App. 685, 693 (2022) (quoting *Wood v.*

*Commonwealth*, 149 Va. 401, 404 (1927)). "An intentional touching qualifies as a battery unless the actor has some legal justification or excuse. The presence of a justification or excuse transforms what would otherwise be a criminal offense into a permissible act. Common justifications for battery include consent and self-defense." *Id.* at 694.

Virginia law "has long recognized that a person who reasonably apprehends bodily harm by another is privileged to exercise reasonable force to repel the assault." *Diffendal v. Commonwealth*, 8 Va. App. 417, 421 (1989). "A defendant bears the burden of introducing evidence supporting the affirmative defense of self-defense." *Washington v. Commonwealth*, 75 Va. App. 606, 617 (2022). "'Whether an accused' meets this threshold 'is a question of fact.'" *Id.* (quoting *Smith v. Commonwealth*, 17 Va. App. 68, 71 (1993)). "In order to establish self-defense, a defendant must show that he . . . 'reasonably believed that [he] was in danger of'" bodily harm. *See id.* (alterations in original) (quoting *Jones v. Commonwealth*, 71 Va. App. 70, 86 (2019)).

D.M. and Paone presented materially conflicting versions of the altercation. In support of his assertion that he established self-defense as a matter of law, Paone asks us to credit his testimony and reject D.M's. But, under our appellate standard of review, this Court must view the evidence in the light most favorable to the Commonwealth, not in the light most favorable to him.

D.M. testified that after calling her profane names and a racial slur, Paone shoved her into the closet rack. After she pushed him back, he knocked her to the ground and hit her three times, twice in the face. Deputy Dodson also testified that Paone admitted to shoving D.M. after she threw his ties on the ground. A rational jury viewing this evidence in the light most favorable to the Commonwealth could find that Paone committed an unjustified assault and battery against D.M.

Paone further contends that D.M.'s testimony was impeached with prior inconsistent statements, while his testimony "regarding self-defense was consistent and unimpeached." But the jury, "who ha[d] the opportunity to see and hear the witnesses," and to see the evidence about the parties' respective injuries, "ha[d] the *sole* responsibility to determine their credibility, the weight to be given their testimony, and the inferences to be drawn from proven facts." *Commonwealth v. McNeal*, 282 Va. 16, 22 (2011) (quoting *Commonwealth v. Taylor*, 256 Va. 514, 518 (1998)). Thus, it was the jury's prerogative to decide how much credibility to give the testimony. Accordingly, the fact that the defense sought to impeach D.M.'s testimony provides no cause for this Court to disturb the jury's credibility determinations.

III. Proposed Self-Defense Jury Instruction

Finally, Paone challenges the trial court's refusal to instruct the jury that it must acquit him if it found that the Commonwealth proved the elements of the offense beyond a reasonable doubt but also found that he acted in self-defense.

This Court reviews a trial court's decisions in giving and denying requested jury instructions for abuse of discretion. *Conley v. Commonwealth*, 74 Va. App. 658, 675 (2022). Our "responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'" *Id.* at 674-75 (quoting *Fahringer v. Commonwealth*, 70 Va. App. 208, 211 (2019)). "If the principles set forth in a proposed instruction are fully and fairly covered in other instructions that have been granted, a trial court does not abuse its discretion in refusing to grant a repetitious instruction." *Fahringer*, 70 Va. App. at 211 (quoting *Joseph v. Commonwealth*, 249 Va. 78, 90 (1995)). Paone contends that his proposed instruction "accurately state[d] the law and provided a concise statement of both the elements of the crime and the law on self-defense." However, Paone does not contest that the provided instructions accurately informed the jury of the elements, the

Commonwealth's burden of proof, and the law of self-defense. Instead, he only challenges the trial court's refusal to include an additional reference to self-defense in the elements instruction. Though he argues that his proposed instruction would avoid confusion, he does not explain how the trial court's instructions presented a colorable risk of confusion. Given that Paone was charged with only one offense, and the self-defense instructions immediately followed the elements instruction, we find no such risk here. The trial court's instructions fully and accurately stated the law, and the court did not abuse its discretion by declining to give Paone's proposed instruction.

CONCLUSION

Accordingly, this Court affirms the circuit court's judgment.

*Affirmed.*