COURT OF APPEALS OF VIRGINIA

Present: Judges Malveaux, Athey and Senior Judge Humphreys

RICHARD ELTON WHITTED

MEMORANDUM OPINION*
v.      Record No. 0936-24-3                              PER CURIAM
                                                         SEPTEMBER 9, 2025

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
F. Patrick Yeatts, Judge

(John S. Koehler; The Law Office of James Steele, PLLC, on brief),
for appellant.

(Jason S. Miyares, Attorney General; Jennifer L. Guiliano,
Assistant Attorney General, on brief), for appellee.


Following a two-day trial, a jury empaneled in the Circuit Court of the City of Lynchburg

("trial court") convicted Richard Elton Whitted ("Whitted") of object sexual penetration, in

violation of Code § 18.2-67.2. On appeal, Whitted contends that 1) the trial court lacked subject

matter jurisdiction to convict him under the amended indictment, 2) the trial court erred in

denying his proposed jury instruction, and 3) the trial court further erred in confirming the jury's

verdict.[1]

---

\* This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] This Court granted Whitted's two unopposed motions for extensions of time in which to
file his opening brief as well as the Commonwealth's unopposed initial motion for an extension
of time in which to file its brief. The Commonwealth also has filed a motion for leave to file an
amended brief to respond to one of Whitted's arguments. We hereby grant the Commonwealth's
second motion to extend the time to file the Commonwealth's brief and deem that brief to be
timely filed. Even though we find for the reasons stated below that the argument Whitted raised
that prompted the amended brief is waived for lack of preservation, we nevertheless also grant
the Commonwealth's motion for leave to file the amended brief.

Finding Whitted's assignments of error either waived or unpersuasive, we affirm the trial court's judgment for the following reasons.[2]

## I. BACKGROUND[3]

In October of 2019, E.L.[4] was an 18-year-old student attending Liberty University in Lynchburg, Virginia. Frank Esdras ("Esdras") first met E.L. during Liberty University's Homecoming. She subsequently contacted Esdras on October 26, 2019, advising him that "she wanted to get out of her dorm." In response, Esdras and Whitted picked E.L. up from her dormitory "between 7:00 and 9:00 p.m." that night. E.L., Whitted, and Esdras drove to Esdras's apartment where they met up with two other men. E.L. had never met Whitted or the other men until that evening. Before departing from Esdras's apartment that night to attend a Halloween party, E.L. drank "vodka and brown liquor." Although she could not remember how many alcoholic drinks she had consumed at Esdras's apartment, she recalled feeling unwell as a result of drinking the alcohol. Esdras, who witnessed E.L.'s alcohol consumption at his apartment, did not think E.L. seemed intoxicated when they left his apartment for the Halloween party. E.L., Esdras, and Whitted then drove to a Halloween party at another location where E.L. consumed two more shots of "brown liquor" before she "black[ed] out." Esdras, who was aware that E.L.

---

[2] Having examined the briefs and record in this case, the panel unanimously agrees that oral argument is unnecessary because "the appeal is wholly without merit." *See* Code § 17.1-403(ii)(a); Rule 5A:27(a).

[3] We recite the necessary facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Konadu v. Commonwealth*, 79 Va. App. 606, 609 (2024) (quoting *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)). "Doing so requires that we 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Id.* (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).

[4] We refer to the victim by her initials to protect her privacy.

consumed additional alcohol at the Halloween party but was not aware of how much she had consumed, still thought that E.L. "seemed fine."

A woman attending the Halloween party attempted to address E.L.'s intoxication by feeding her some chips and giving her some water. However, E.L. threw up multiple times and passed out again. Esdras had previously planned to drive E.L. back to her dormitory following the party, but when she passed out again as soon as they got in his car to leave the party, he decided to drive her back to his apartment. Esdras reasoned that because of E.L. being unconscious, he could not sneak her into her dormitory and back into her room. Thus, he transported her back to his apartment to assist her in changing her soiled clothes due to excessive vomiting.

After arriving back at his apartment, Esdras became increasingly concerned about E.L.'s intoxicated condition. He initially asked Whitted to go to Wal-Mart to get E.L. "a pack of water bottles and some Hot Pockets" to help her sober up. However, Whitted refused, claiming that "he had to work in the morning." Eventually, Esdras went to Wal-Mart himself, but before leaving, Esdras "gave [Whitted] some rules," telling him to "let her rest." He also warned Whitted that "she's intoxicated; don't go near her; don't talk to her" and that if she was still coughing or vomiting while Esdras was at Wal-Mart, Whitted was to call him so that Esdras could "take care of it" upon returning.

Esdras was away from the apartment for about 30 minutes. Whitted called him three separate times while he was gone. The first time, Whitted told Esdras that "[E.L.] was making . . . noises like she was about to throw up." In response, Esdras "repeated the same rules." When Whitted called Esdras at Wal-Mart a second time, Whitted told him that E.L. "was still making the noises and this time she was making sexual advances towards him." Esdras advised Whitted again, "Don't touch her; don't go near her; just let her be; I'll handle it when I get

- 3 -

back." The third time Whitted called was while Esdras was leaving Wal-Mart. Whitted said, "[S]he's still making noises; she's still trying to make sexual advances towards me." Esdras "responded the same [as] the last two times."

When Esdras returned to his apartment, he noticed that the leggings that E.L. had changed into were now on the floor. Esdras then awakened E.L. long enough for her to put her leggings back on. Esdras stayed with E.L. until she finally woke up at about 4:00 a.m. Upon waking, E.L. requested to leave immediately, and Esdras drove her back to her dormitory.

The following morning, E.L. recalled that before she blacked out at the Halloween party, she had been speaking with other girls from Liberty University. She could also recall "moments" when she was throwing up and then being on someone's bed. She further recalled feeling "pain in [her] vaginal area," a "sharp pain" in an area "past the outer lips of [her] vagina" inside her vagina, and that she "was moving but [she] was not conducting [her] own movements." She described the motion as "a thrusting motion in a way." She further recalled a "tall male" in front of her, but she could not make out his face and that after "eight or ten seconds," she blacked out again. E.L. also remembered arriving at her dormitory in Esdras's car but did not recall speaking to Esdras at that time. She also recalled that when she returned to her dorm, she was wearing the leggings she had changed out of when putting on her costume for the party. She was also wearing a black t-shirt that she did not recognize, and her underwear was missing.

E.L. initially contacted her community group leader concerning what had occurred the previous night. She was then referred by the group leader to her Resident Advisor, who subsequently contacted the Liberty University Campus Police Department to report the incident. The Campus Police transported her to the hospital for a forensic examination, which resulted in

DNA samples being taken, one vaginal and one anorectal. These samples were subsequently sent for testing to the Virginia Department of Forensic Science ("DFS").

At trial, Kathleen Holznagel ("Holznagel"), a Forensic Scientist Senior at DFS, testified that when she tested the DNA samples collected from E.L.'s cervix, she identified two DNA profiles. She further testified that the first DNA profile identified belonged to E.L. Holznagel further testified that Esdras was eliminated as a contributor to the second DNA profile, but that Whitted could not be eliminated as a contributor to the second DNA sample. She also testified that spermatozoa were present in the second sample. Holznagel then stated "that a DNA mixture profile attributable to [E.L.] and one additional contributor was developed from the anorectal sample" collected from E.L. She testified that Esdras was also eliminated as an additional contributor, but Whitted could not be eliminated. Holznagel then opined that for each DNA sample, the probability of randomly selecting an individual with a DNA profile matching the one developed from the sample "was one in greater than 7.2 billion." She further opined that she "would not expect that those foreign DNA profiles would come from a transfer situation."

Lynchburg Police Detective David Dubie ("Detective Dubie") also testified that he had interviewed E.L. who had initially assumed that Esdras was involved because she knew him "and it was his apartment." Detective Dubie also testified that E.L. had mentioned that Whitted had been present that night as well. He also testified concerning his interview of Esdras. Detective Dubie testified that Esdras denied having sex with E.L. and stated that he was not aware of anything that had happened in his apartment after he left for Wal-Mart to pick up items to assist her. After being interviewed by Detective Dubie, Esdras called Whitted and kept asking him if he did anything to E.L. while Esdras was at Wal-Mart. Esdras later advised the detective that Whitted denied having sexual relations with E.L. the first two times Esdras asked him, but

that "the third time his story changed." "It just went from, oh, I did this to, oh, I don't remember exactly."

Detective Dubie further testified that he interviewed Whitted on October 28, 2019. According to Detective Dubie, Whitted only admitted to helping get E.L. back to Esdras's apartment and then to sleeping on two chairs in the living room. Detective Dubie then asked Whitted if they would find his DNA inside E.L. Whitted first answered that he did not know E.L. and then answered no. Detective Dubie then asked Whitted if he had gone into the room where E.L. was sleeping, and Whitted said that he had not.

Before trial, Whitted was charged with felony rape in violation of Code § 18.2-61. However, "[a]fter speaking to [E.L.] and looking over the reports involved it became clear to the Commonwealth that the victim would [be] unable to testify to what she was penetrated with on the night in question." Thus, the Commonwealth sought to amend Whitted's indictment to object sexual penetration in violation of Code § 18.2-67.2. Whitted did not oppose the motion to amend the indictment, which was subsequently granted, however the trial court failed to sign the order granting the motion amending the indictment.

During its case in chief, the Commonwealth adduced testimony from E.L., Esdras, Detective Dubie, and Holznagel. In addition, the Commonwealth and counsel for Whitted proposed jury instructions including Jury Instruction O proposed by Whitted, which instructed that "Object Sexual Penetration is a violent sexual felony." The Commonwealth objected to proposed Jury Instruction O because "[t]here [was] no evidence that this case involves force" and that the use of "force" was not the Commonwealth's theory of the case. Whitted responded that his proposed Jury Instruction O was a "correct statement of the law." After considering the argument of counsel, the trial court subsequently rejected Whitted's proposed Jury Instruction O on the grounds that the proposed instruction was not "relevant." The trial court reasoned that

- 6 -

other instructions given by the trial court would ensure that the jury would be "told that it's a felony; that he's indicted and is standing trial for a felony offense." The trial court further observed that "[o]ther than inflaming the jury that there may be some other consequences associated with being a violent sexual felony if he's found guilty, it might invite jury nullification." When the Commonwealth rested following completion of its case-in-chief, Whitted moved to strike the amended indictment based upon the lack of sufficient proof of the identity of E.L.'s assailant. After considering the argument of counsel, the trial court denied the motion to strike. Whitted presented evidence in his defense before resting his case. Whitted then renewed his motion to strike on the same grounds previously denied, which was denied by the trial court again.

The trial court then proceeded to instruct the jury, and after closing arguments, the jury retired to consider its verdict. Following deliberations, the jury returned its verdict convicting Whitted of object sexual penetration. The trial court subsequently sentenced Whitted to a total of 40 years in prison, with 30 years suspended. Whitted appealed.

## II. ANALYSIS

### A. *Standard of Review*

The determination of whether an amendment to an indictment changes the nature and character of the charged offense presents a question of law involving the interpretation of various statutes, and accordingly, is reviewed "*de novo*." *Pulliam v. Commonwealth*, 55 Va. App. 710, 713 (2010). Further, "[a] reviewing court's responsibility in reviewing jury instructions is to 'see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'" *Fahringer v. Commonwealth*, 70 Va. App. 208, 211 (2019) (quoting *Darnell v. Commonwealth*, 6 Va. App. 485, 488 (1988)). "We review a trial court's decisions in giving and denying requested jury instructions for abuse of discretion." *Holmes v. Commonwealth*, 76

Va. App. 34, 53 (2022) (quoting *Conley v. Commonwealth*, 74 Va. App. 658, 675 (2022)). "[W]hether a jury instruction accurately states the relevant law is a question of law that we review de novo." *Watson v. Commonwealth*, 298 Va. 197, 207 (2019) (quoting *Payne v. Commonwealth*, 292 Va. 855, 869 (2016)). But the trial court should not give an instruction that "would be confusing or misleading to the jury." *Graves v. Commonwealth*, 65 Va. App. 702, 708 (2016) (quoting *Mouberry v. Commonwealth*, 39 Va. App. 576, 582 (2003)).

B. *Whitted's contention that there is a fatal variance in the indictment is waived.*

Whitted contends on brief that the trial court lacked subject matter jurisdiction and that, therefore, this Court lacks jurisdiction to hear the merits of his appeal. In support, Whitted asserts that because the trial court did not enter a valid, signed order memorializing its previous ruling granting the Commonwealth's unopposed motion to amend the indictment to charge him with object sexual penetration rather than rape, the trial court lacked jurisdiction to entertain the amended indictment. Thus, Whitted further contends the initial indictment was not successfully amended and the trial court could only have convicted him of the previously indicted rape charge. We disagree.

"[A] court always has jurisdiction to determine whether it has subject matter jurisdiction." *Watwood v. Commonwealth*, 79 Va. App. 751, 757 (2024) (alteration in original) (quoting *Pure Presbyterian Church of Wash. v. Grace of God Presbyterian Church*, 296 Va. 42, 50 (2018)). It is settled law in Virginia that when the offense is one over which the court has jurisdiction and the court acquires jurisdiction of the person of the defendant, "it has jurisdiction and power to determine the elements which constitute the offense and the sufficiency of the indictment, and such jurisdiction necessarily embraces the power to make an erroneous, as well as a correct decision." *Cunningham v. Hayes*, 204 Va. 851, 856 (1964) (quoting *Barnes v. Hunter*, 188 F.2d 86, 90 (10th Cir. 1951)). However, "[a] conviction for a crime other than the

one charged in the indictment is plainly reversible." *Commonwealth v. Bass*, 292 Va. 19, 28 (2016). "Often called a constructive amendment, a fatal variance occurs where the indictment charges a wholly different offense than the one proved." *Purvy v. Commonwealth*, 59 Va. App. 260, 266-67 (2011). But a variance that a party fails to timely object to does not implicate the trial court's jurisdiction. *See Bass*, 292 Va. at 27-28. In *Bass*, our Supreme Court found that a fatal variance occurred when Bass was indicted for an attempted robbery, but the evidence proved a completed robbery "and the jury convicted Bass accordingly." *Id.* at 28. However, the Supreme Court rejected Bass's further argument that the error rendered the judgment void. *Id.* It held that "the circuit court acted within its authority when it convicted Bass, however erroneously, of robbery." *Id.* at 30.

However, an issue that is not part of an appellant's assignment of error is waived. *Riddick v. Commonwealth*, 72 Va. App. 132, 146 (2020) (noting that "we are 'limited to reviewing the assignments of error presented by the litigant'" and "cannot 'consider issues touched upon by [the appellant]'s argument but not encompassed by his assignment of error'" (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 289, 290 (2017))). "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. "Ordinarily, '[t]he Court of Appeals will not consider an argument on appeal which was not presented to the trial court.'" *Fletcher v. Commonwealth*, 72 Va. App. 493, 510 (2020) (alteration in original) (quoting *Ohree v. Commonwealth*, 26 Va. App. 299, 308 (1998)). "It is well settled that the question of a variance between an indictment and the proof offered at trial is subject to the contemporaneous objection rule." *Bass*, 292 Va. at 27 n.4.

Here, Whitted concedes that he did not raise this argument at trial. Whitted also raised no such error in his September 12, 2024 "Statement of Assignments of Error," and he does not assign error in his opening brief to any ruling, or failure to rule, by the trial court on a claim of a fatal variance. Thus, like *Bass*, we find that Whitted raises, at most, an unassigned claim of trial error. Therefore, we find the issue is waived under Rule 5A:18.[5]

C. *The trial court did not err in declining to give Whitted's proposed jury instruction.*

Whitted further contends that the trial court erred in rejecting his proposed Jury Instruction O, which he claims is a "correct statement of the law." He supports his assertion by noting that "[o]bject sexual penetration is defined by statute as a violent felony," per Code § 18.2-67.5:3. But, reviewing de novo whether Instruction O accurately states the relevant law, we disagree.

As support for his contention, Whitted relies upon a code section titled "Punishment upon conviction of certain subsequent violent felony sexual assault." *Id.* However, as held by the Supreme Court of Virginia, "the headline of a Code section is not part of the statutory language and does not have the force of law." *Butler v. Fairfax Cnty. Sch. Bd.*, 291 Va. 32, 38 (2015) (quoting Code § 1-217). The phrase "violent sexual felony" does not appear in the statute itself. The code section's limited purpose is to fix the punishment for certain second or subsequent offenses at life imprisonment and to prohibit suspension of any of that sentence. Code § 18.2-67.5:3(A). It then lists the offenses to which that requirement applies. Code

---

[5] Whitted argues in the alternative that, if "this issue does not raise an issue of subject matter jurisdiction but of trial error," this Court should apply the "ends of justice" exception, "as it is manifestly unjust for a defendant to be convicted of an offense for which he was never subject to a proper indictment." Our Supreme Court has held to the contrary. "This Court has previously held that no grave injustice occurs merely because a variance exists between an indictment and the evidence offered at trial—even where the defendant is convicted of a greater crime than the one charged in the indictment." *Bass*, 292 Va. at 30 (citing *Henson v. Commonwealth*, 208 Va. 120, 121 (1967)). Thus, we find this argument unpersuasive.

§ 18.2-67.5:3(B). That list includes "Object sexual penetration in violation of § 18.2-67.2." Code § 18.2-67.5:3(B)(3). Outside of this header, Whitted provides no authority that the section's header is a correct statement of law outside the context of sentencing for certain second or subsequent offenses. And Whitted was not charged with a second or subsequent offense here and does not articulate how a definition governing sentencing for such repeat offenses applies in his case, much less how it bore on his guilt or innocence—the only issue before the jury. Thus, his position that his proposed jury instruction correctly states the law is simply not accurate given the context of this case and following legal review.

In addition, the trial court never directly addressed whether Whitted's proposed Instruction O was a correct statement of law anyway. Hence, Whitted's assertion on appeal fails to even address the actual basis upon which the trial court rejected Instruction O, namely, that the proposed instruction was not relevant to the offense he was indicted upon and thus could inflame the jury and potentially cause jury nullification. Whitted also fails to dispute that his proposed Instruction O risked inflaming the jury, confusing the jury, or inviting jury nullification. In fact, Whitted concedes that the trial court "would have been within its authority to prevent Whitted['s] counsel from overtly seeking jury lenity," but urges that it was error for it to refuse a defense instruction that had no relevance to the contested issues and also had a tendency to encourage jury nullification to his benefit. "While we are not naïve enough to think jury nullification never occurs (it 'undoubtedly' does in some cases) no principle of constitutional import entitles 'a party to encourage such behavior,' or to even imply its legitimacy." *Lilly v. Commonwealth*, 50 Va. App. 173, 185-86 (2007) (quoting *Walls v. Commonwealth*, 38 Va. App. 273, 282 (2002)). Hence, since current precedent does not give credence to his contention, we decline to give the argument "legitimacy." *Id.* Thus, we are compelled to conclude that Whitted failed to demonstrate that the trial court abused its discretion.

D. *Whitted's purported sufficiency challenge is waived under Rule 5A:20.*

Lastly, Whitted now contends on brief that the evidence was insufficient to convict him of the offense charged in the amended indictment. However, since no challenge to the sufficiency of the evidence can be found within Whitted's assignments of error, any challenge he may currently have to the sufficiency of the evidence is waived.

"An assignment of error that does not address the findings, rulings, or failures to rule on issues in the trial court . . . is not sufficient." Rule 5A:20(c)(2).

> It follows that for an assignment of error to comply with Rule 5A:20(c)(2) and Rule 5A:18, it must identify an erroneous ruling, finding, or failure to rule *by the trial court*. The Rules of the Supreme Court are not surplusage, nor are they a menu from which litigants may freely pick and choose.

*Barnes v. Commonwealth*, 80 Va. App. 588, 595 (2024).

In fact, even though Whitted's second assignment of error specifically contends that the trial court erred "in confirming the jury's finding of guilt where the evidence failed to show that the sexual act occurred and was not consensual," he fails to identify any ruling by the trial court confirming the jury's finding of guilt, much less any objection properly made by him to preserve this alleged assignment of error. Although it is true that the trial court received the verdict from the jury, and as the trial court was obliged to do, it simply entered judgment confirming the jury's verdict as reported by the foreperson, Whitted never moved to challenge the verdict, either orally or in writing, at trial, or during or after sentencing. In addition, Rule 5A:20(c) required Whitted to identify "the page(s) of the record or appendix where the alleged error has been preserved in the trial court" along with his proposed assignment(s) of error. The pages Whitted cites in support of this specific assignment of error are limited to his motion to strike and

renewed motion to strike, both of which occurred before the verdict.[6] Since Whitted's sufficiency challenge contained within his second assignment of error does not comply with Rule 5A:20(c)(2), the assignment of error is waived.[7] *Barnes*, 80 Va. App. at 595. We therefore affirm the trial court's judgment.

### III. CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed.

*Affirmed.*

---

[6] The Commonwealth pointed out the issue in her brief. Whitted has filed no reply brief and no other pleading seeking to amend his assignment of error.

[7] In addition, Whitted's assignment of error is also waived under Rule 5A:18. "Making one specific argument does not preserve a separate legal point on the same issue for review." *Rompalo v. Commonwealth*, 72 Va. App. 147, 156 n.3 (2020) (quoting *Edwards v. Commonwealth*, 41 Va. App. 752, 760 (2003) (en banc)). Whitted's motions to strike were limited to disputing the sufficiency of the proof in support of Whitted being identified as the assailant. However, on appeal, Whitted abandons that argument by conceding that "the DNA evidence was sufficient to prove that Whitted has sexual contact with E.L." Instead, he now argues that the jury "would have had to resort to speculation that [the crime] could have occurred *solely* because of E.L.'s incapacity."

Whitted was required to preserve that argument in his motion to strike made before the trial judge. In a jury trial, the defendant's "opening statement and closing arguments were made to the jury, not the trial court, and therefore [opening statements and closing arguments made to a jury] do not preserve the issue for appeal." *Rompalo*, 72 Va. App. at 156 n.3. "[I]n a jury trial, the closing argument is addressed to the jury, not the trial judge, and does not require the trial judge to rule on the evidence as a matter of law. Only a motion to strike the evidence accomplishes that objective in a jury trial." *Campbell v. Commonwealth*, 12 Va. App. 476, 481 (1991). Thus, Whitted's incapacity argument is waived under Rule 5A:18 as well.

- 13 -